UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-CV-21340-FAM

DIANE URE, and THOMAS URE, JR.,

   Plaintiffs,

vs.

OCEANIA CRUISES, INC., and
FABIAN BONILLA, M.D.,

   Defendants.

                 /

### DEFENDANT, OCEANIA CRUISES, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant, OCEANIA CRUISES, INC. ("Oceania"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, by and through undersigned counsel, moves to dismiss Plaintiffs' Complaint [D.E. 1] for failure to state a claim upon which relief may be granted, and in support states as follows:

### I.   Preliminary Statement

This is an action by a cruise ship passenger who alleges she sustained undisclosed injuries as a result of the "mismanagement" of her medical care by a physician working aboard ship, Fabian Bonilla, M.D. ("Dr. Bonilla"), and  undisclosed medical personnel at an unaffiliated land-based foreign hospital. Plaintiffs' Complaint should be dismissed in its entirety on several grounds, including that the causes of action are not actionable under long-standing and controlling maritime law[1]. *See Hill v. Celebrity Cruises, Inc.*, 2011 WL 5360247 (S.D. Fla. Nov.

---

[1] Where an alleged tort occurs aboard a ship sailing upon navigable waters, federal maritime law governs the resulting substantive claims. *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1564 n. 10 (11th Cir.1991).

7, 2011) (Moreno, J), citing *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364, 1369 (5th Cir.1988) ("It is well-established maritime law that when a cruise line's 'doctor is negligent in treating a passenger ... that negligence will not be imputed to the carrier'"). Plaintiffs attempt to circumvent *Barbetta* by erroneously claiming that Oceania's voluntary adoption of the International Cruise Line Passenger Bill of Rights ("PBOR"), which merely calls for "professional medical attention" aboard ship [D.E. 1 at ¶¶13 – 15], nullifies this decades-old precedent. As addressed in detail below, general maritime law invalidates Plaintiffs' argument.

Plaintiffs assert the following causes of action and theories of liability against Oceania: **Count I** – Negligence (for the acts of Dr. Bonilla based on the theory of *respondeat* superior); **Count II** – Negligent Hiring and/or Retention of Dr. Bonilla; **Count III** – General Negligence (for the acts of Dr. Bonilla and undisclosed shore side medical personnel); **Count IV** – Apparent Agency (seeking vicarious liability for the acts of Dr. Bonilla); **Count V** – Joint Venture between Oceania and Dr. Bonilla (similarly seeking vicarious liability for the acts of Dr. Bonilla); **Count VI** – Third-Party Beneficiary Breach of Contract (similarly seeking vicarious liability for the acts of Dr. Bonilla); **Count VIII** – Loss of Consortium/Society. Plaintiffs also demand punitive damages. For the following reasons, all counts should be dismissed for failure to state a cause of action and the demand for punitive damages stricken:

1. **Count I (Negligence for acts of Dr. Bonilla) & Count III (Negligent provision of shipboard and shore side medical care)** should be dismissed with prejudice because, as a matter of law, the negligence of a shipboard physician cannot be imputed to Oceania. Similarly, as a matter of law, Oceania owes no duty to provide medical services, medical equipment, medical transportation, identify adequate land based medical facilities, or promulgate or enforce particular medical directives regarding patient care;

   Oceania's voluntary adoption of the PBOR, which merely calls for the availability of "professional medical attention," which Plaintiff does not allege was lacking aboard ship, does not invalidate the application of *Barbetta* that a shipowner is not liable for the negligence of a duly qualified doctor;

2. **Count II (Negligent Hiring/Retention)** should be dismissed because it fails to state a cause of action. Plaintiffs state no facts supporting that Dr. Bonilla was unfit or unqualified, let alone that Oceania was on notice about the same;

3. **Count IV (Apparent Agency)** should be dismissed with prejudice because "it would be illogical to hold [a carrier] liable under a theory of apparent agency when clearly established maritime law precludes liability under a theory of actual agency." *Hill*, 2011 WL 5360247 at *2. Even if the apparent agency claim was not foreclosed as a matter of law, Plaintiffs still fail to state a cause of action because they do not allege that Oceania made an explicit manifestation that Dr. Bonilla was their agent or state how their position changed in reliance to Oceania's alleged manifestations;

4. **Count V (Joint Venture)** should be dismissed with prejudice because, like Count IV, it impermissibly attempts to circumvent *Barbetta* and its progeny. Moreover, even if Plaintiffs could proceed under this theory, the Complaint does not plead sufficient facts in support;

5. **Count VI (Third-Party Beneficiary Claim)** should be dismissed because Plaintiffs do not allege that Oceania breached the purported contract between Oceania and Dr. Bonilla or that an express provision in the contract of carriage guarantees safe passage;

6. **Count VIII (Loss of Consortium/Society)** should be dismissed with prejudice because it is precluded under maritime law;

7. **Punitive Damages Demand** should be stricken because the Complaint fails to allege a factual basis supporting recovery. Specifically, it does not allege wanton, willful, or outrageous conduct, let alone facts in support of said conduct.

## II.      Memorandum of Law

**A.      Plaintiffs' negligence claims (Counts I & III) should be dismissed.**

### 1.      Plaintiffs' negligence claims are foreclosed by controlling maritime law.

There are few rules in general maritime law as well-settled as the rule articulated by the Fifth Circuit Court of Appeals in *Barbetta*, which dates back to at least 1887, that a shipowner, as a matter of law, does not owe a duty to provide medical services and cannot be held vicariously liable for the negligence of a ship's physician in treating passengers. This Honorable Court has consistently and routinely dismissed numerous similar Complaints attempting to circumvent *Barbetta*[2] and the Eleventh Circuit has affirmed decisions applying it. *See, e.g., Nanz*

---

[2] *See e.g. Mumford v. Carnival Corp.*, 2014 WL 1243786 (S.D. Fla. Mar. 18, 2014) (Lenard, J); *Farrell v. Royal Caribbean Cruises, Ltd.*, 2013 WL 178242 (S.D. Fla. Jan. 2, 2013) (Lenard, J); *Hung Kang Huang v. Carnival Corp.*, 909 F. Supp. 2d 1356 (S.D. Fla. 2012) (Ungaro, J); *Peavy*

*v. Costa Cruises, Inc.,* 932 F.2d 977 (11th Cir.1991) (unpublished table decision), *off'ing* 1991 AMC 48 (S.D.Fla.1990) (holding that "as a matter of law, [a shipowner] cannot be held liable for the negligence, if any, of [a shipboard medical provider]"). The only other Circuit Court of Appeals to address the rule articulated in *Barbetta* – the Second and the Ninth – have similarly applied it. *See The Great Northern*, 251 F. 826 (9th Cir. 1918); *The Korea Maru*, 254 F. 397 (9th Cir. 1918); and *Cummiskey v. Chandris, S.A.*, 719 F. Supp. 1183 (2d Cir. 1990).

Indeed, the *Barbetta* rule is so well known and uniformly applied that this Honorable Court, in a prior case, even cautioned the same attorneys representing Plaintiffs in the present case against reattempting to circumvent it. See *Royal Caribbean Cruises, Ltd. v. Jackson*, 921 F. Supp. 2d 1366, 1372, fn 3 (S.D. Fla. 2013) (Seitz, J) (internal citation omitted).

> . . . several of Respondents' alleged duty breaches are based on duties that [cruise carrier] does not have. Under *Barbetta* a carrier has no duty to furnish medical care to its passengers. Thus, subparagraphs l and m, which allege a failure to provide proper emergency medical care and a failure to provide prompt and proper medical care, are dismissed with prejudice. fn 3, Respondents' counsel are seasoned maritime attorneys and should be more than aware that no such duty is owed by [cruise carrier].

Despite the overwhelming weight of the applicable precedent and the admonishment of this Court, Counts I and III assert the same nonexistent duties and causes of action this Court has uniformly rejected dozens of times. Indeed, the allegations in Count I are practically identical to the allegations Plaintiffs' attorneys asserted in Count I of the complaint in *Mumford v. Carnival*, which this Honorable Court recently dismissed with prejudice (along with the rest of the Complaint). The court in *Mumford* held:

> Here, Plaintiff's allegations that Carnival failed to properly diagnose, treat, provide medical care, divert, transport, medicate, provide and maintain medical facilities and equipment, provide procedures regarding treatment and communication with onshore medical departments, warn of allegedly unqualified doctors and nurses, and/or train, instruct, and supervise medical personnel are all

---

*v. Carnival Corp.*, 2012 WL 5306353 (S.D. Fla. Oct. 26, 2012) (Seitz, J); *Hill v. Celebrity Cruises, Inc.*, 2011 WL 5360247 (S.D. Fla. Nov. 7, 2011) (Moreno, J); *Balachander v. NCL (Bahamas) Ltd.*, 800 F. Supp. 2d 1196 (S.D. Fla. 2011) (King, J); *Wajnstat v. Oceania Cruises, Inc.*, 2011 WL 465340 (S.D. Fla. Feb. 4, 2011) (Cooke, J); *Hajtman v. NCL (Bahamas) Ltd.*, 2008 WL 1803630 (S.D. Fla. Apr. 21, 2008) (Moore, J); *Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F. Supp. 2d 1278 (S.D. Fla. 2007)(Gold, J); *Suter v. Carnival Corp.* 2007 WL 4662144, (S.D. Fla. 2007) (Altonaga, J); and numerous others.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

predicated on duties of care that are not recognized under maritime law. Accordingly, they are insufficient to sustain an actionable negligence claim.

*Mumford*, 2014 WL 1243786 at *3 – 4, citing, *inter alia*, *Franza v. Royal Caribbean Cruises,* 948 F.Supp.2d 1327, 1331 (S.D.Fla.2013); and *Farrell,* 2013 WL 178242, at *3.

The allegations in Count I and III asserting a failure to recommend an adequate medical facility, failing to inform about adequate facilities in other countries, etc. (D.E. 1, at ¶34 m and ¶45) have also been rejected by this Honorable Court. *See Wajnstat*, 2011 WL 465340 at *4 (emphasis added) where the court held:

> Mr. Wajnstat's remaining claims in count I, for *failing to identify appropriate land-based medical facilities,* and for failing to warn Mr. Wajnstat of the limitations on the availability of emergency medical consultation and evacuation services in case of medical emergencies during the cruise, *both fail for similar reasons. Cruise ships are not floating hospitals*. Through conclusory allegations, the Plaintiff attempts to assert liability against Oceania Cruises regarding acts or omissions for which Oceania Cruises owed no duty to the Plaintiff. These allegations are dismissed with prejudice.

*See also Gliniecki v. Carnival,* where the plaintiff alleged that the cruise line failed to transport her husband to a suitable hospital in an adequately equipped ambulance:

> To vest Carnival, and ship owners like it, with the duty to provide medical transportation services in foreign ports of call each time a passenger falls ill would turn cruise lines into insurers of passenger health, a proposition which runs contrary to the dictates of *Barbetta.* "A shipping company is not in the business of providing medical services to passengers." *Barbetta,* 848 F.2d at 1374 (citation omitted). "[I]t does not possess the expertise requisite to supervise" medical transportation officers or inspect medical transportation equipment. *Id.* Indeed, this Court has refused similar invitations to elevate ship owners to the status of medical services providers. Because Carnival has no duty to provide medical transportation policies or services, Plaintiff cannot state a claim upon which this Court can grant relief, and thus leave to amend would be futile. Therefore, the Court must grant Carnival's motion to dismiss with prejudice.

The above cited precedent is unequivocal and firmly supports that Plaintiffs' claims in Counts I and III cannot support a valid cause of action and should be dismissed with prejudice.

And even assuming Plaintiffs could proceed on allegations that Oceania failed to arrange treatment at an adequate land based foreign facility, the claim still fails because it is devoid of facts supporting the alleged inadequacies. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted). In addition, the Complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. *See also* analysis addressing Plaintiffs' claims of negligent hiring and/or selection of Dr. Bonilla, *infra*.

2.    **Oceania's voluntary adoption of the PBOR which merely calls for the availability of "professional medical attention," does not contradict the rule in *Barbetta* that is relevant in this case, that a ship owner is not liable for the negligence of a duly qualified doctor. Moreover, even assuming that the PBOR could support a negligence cause of action, which it cannot, the Complaint is devoid of factual allegations supporting a breach.**

Plaintiffs' reliance on Oceania's voluntary adoption of the PBOR is misplaced. The PBOR, which Oceania communicates to passengers through their website,[3] lists ten general rights of which only one – number three – addresses the topic of medical care. The Preamble to the PBOR and the relevant section is below:

> The Members of the Cruise Lines International Association are dedicated to the comfort and care of all passengers on oceangoing cruises throughout the world. To fulfill this commitment, our Members have agreed to adopt the following set of passenger rights:

> No. 3: The right to have available on board ships operating beyond rivers or coastal waters full-time, professional emergency medical attention, as needed until shore side medical care becomes available.

Plaintiffs draw several invalid inferences and conclusions from Oceania's voluntary adoption of the PBOR. First, they conclude that the PBOR calls for the hiring of a medical doctor/physician to work aboard ship. It does not; it merely requires the availability of "professional emergency medical attention," which need not include medical doctors but could include nurses, paramedics, or other professional medical providers. Accordingly, Plaintiffs' allegation that Oceania must have contracted with Dr. Bonilla in order to comply with the PBOR is incorrect and logically unsound. For this reason alone, all allegations in the Complaint relying on the PBOR should be disregarded.

---

[3] See https://www.oceaniacruises.com/corporate/legal/passengerbillofrights.aspx.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Second, Plaintiffs' argument presupposes that Oceania was legally obligated to adopt the PBOR, that the PBOR shapes duties under maritime law, and that a breach (for which there are no supporting factual allegations, see *infra*) establishes negligence.  This is certainly not the case. As this Honorable Court has previously ruled, under general maritime law "a carrier is not required to promulgate or enforce particular medical directives regarding patient care, and it is thus not negligent if it fails to do so." *Mumford*, 2014 WL 1243786 at \*4, citing *Hajtman v. NCL (Bahamas) Ltd.,* 526 F.Supp.2d 1324, 1327 (S.D.Fla.2007). Thus, even if item three of the PBOR could be construed as a "medical directive," which it should not, Oceania cannot be negligent for failing to enforce it.

Third, even disregarding the above legal authorities, the PBOR, at best, is a voluntary policy that several cruise lines, including Oceania, adopted. This Honorable Court has previously ruled that a shipowner's corporate safety policies cannot act to impose a duty nor establish the basis of a negligence claim. Several of these rulings were decided in the context of rejecting theories of liability premised on shipowner's adoption of the International Safety Management ("ISM") Code,[4] which, unlike the PBOR, was adopted by the U.S. Congress. *See e.g. Calderon v. Offen*, 2009 WL 349771, at \* 4 (S.D. Fla. 2009) (Cohn, J) ("as for the ship safety manual and the defendants corporate safety policies, now required by the United States' adoption of the [ISM] code, this Court agrees with another District Court that Congress merely desired to participate with other maritime nations in achieving safety goals, but did not intend to change long established rules of law which govern liability and its allocation in general maritime law."). *See also Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1296298, \*3 (S.D. Fla. Mar. 27, 2013) (Cooke, J); *Rinker v. Carnival Corp.,* 753 F.Supp.2d 1237, 1243 (S.D. Fla 2010) (Seitz, J); *Lapidus v. NCL Am. LLC*, 2012 WL 2193055, \*2 (S.D. Fla. June 14, 2012) (Seitz, J);  *Liberatore v. MSC Cruises*, Case NO. 09-61693-WPD, DE 15 at page 7 (Dimitrouleas, J); and *Brown v. RCL (UK)* Case No. 10-23531-DLG, DE 28 at pages 4 – 5 (Graham, J).

---

[4] By way of background, the ISM Code followed the International Convention for the Safety of Life at Sea (SOLAS), an international treaty setting forth various safety, environmental and other regulations relating to vessels.  Chapter IX of SOLAS, which went into effect in 1998 for passenger ships, including cruise ships, adopted the International Safety Management (ISM) Code. Under the ISM Code, each ship carrier is required to develop its own Safety Management System (SMS).  The SMS for each shipowner must be approved by the flag state. The full text of the ISM is available at the International Maritime Organization's ("IMO") website at www.imo.org).

Fourth, Plaintiffs incorrectly argue that Oceania breached the PBOR. The Complaint contains no allegation that Oceania failed to provide "professional emergency medical attention" aboard ship. Indeed, Plaintiffs admit receiving treatment aboard ship from Dr. Bonilla and make no allegation that he was unlicensed to practice medicine or somehow an amateur/unprofessional physician. Thus, even assuming that compliance with the PBOR was required under maritime law and that a breach of the PBOR could support a cause of action for negligence under general maritime law – which is certainly not the case – the Complaint still fails to state a cause of action.

Lastly, the impermissible legal conclusions Plaintiffs assert in the Complaint, that the adoption of the PBOR renders *Barbetta* inapplicable to Oceania, are entirely without merit. This Court's decision in *Thomas v. Carnival Corp,* Case No. 10-22018, D.E. 71 (S.D. Fla. 2011) (Martinez, J.) (unpublished) is instructive. *See* decision attached as Exhibit "A." In *Thomas*, the plaintiff alleged that the defendant cruise line violated The Passenger Vessel Safety and Security Requirements, 46 U.S. Code § 3507, which unlike the PBOR, requires under U.S. law that some ship owners maintain professional medical staff aboard ship.[5] *See Id* at pages 5 – 6. This section requires the ship owner to make available aboard the vessel at all times medical staff that have undergone a credentialing process. Specifically, physicians must possess a current license and have at least three years of postgraduate practice in general and emergency medicine or hold board certification in emergency medicine, family practice medicine, or internal medicine. See *Id.*

The *Thomas* plaintiff argued that 46 U.S. Code § 3507 operated to overturn *Barbetta*. *See Id.* at page 6-7. The court disagreed and dismissed all allegations against the cruise line premised on negligent medical care provided by the medical personnel. In doing so, the court noted that the statute merely required – as *Barbetta* does for carriers that employ doctors – that the medical personnel possess certain qualifications. The court further stated that "nothing in § 3507 contradicts the rule in *Barbetta* that is relevant in this case, namely that a shipowner is not liable for the negligence of a duly qualified doctor." Even assuming that the PBOR, like § 3507, required Oceania to contract a doctor to work aboard ship, which it does not, Plaintiffs'

---

[5] Although Plaintiffs have not alleged § 3507 applies to Oceania, even if it did apply, it would bear no impact on the issues before the Court. See *Thomas* generally.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Complaint is devoid of factual allegations supporting that the shipboard doctor was unqualified. *Id*.

Accordingly, for the reasons stated above, Plaintiffs' allegations and arguments premised on the PBOR are without merit and should be disregarded. Counts I and III should be dismissed with prejudice.

**B.**     **Plaintiffs fail to state a cause of action for negligent hiring and retention of Dr. Bonilla (Count II).**

This Honorable Court has dismissed numerous other negligent hiring and retention claims on the same basis that warrants dismissal in the present case, namely that the Complaint fails to allege any facts in support. As the Court in *Franza* recently explained:

> Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness. The issue of liability focuses primarily upon the adequacy of the employer's pre-employment investigation into the employee's background. To state a cause of action for the tort of negligent hiring or retention, a plaintiff *must allege facts showing that the employer was put on notice of the harmful propensities of the employee*. The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. Liability for negligent ... retention ... occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.

*Franza*, 948 F. Supp at 1334 (emphasis added, internal citations and quotations omitted)

Like Plaintiffs in the present case, *Franza* alleged a host of breaches (e.g. failure to conduct appropriate investigations into the backgrounds of the medical personnel to determine if they were qualified to practice medicine or handle examination of severe head injuries; failure to hire medical personnel with appropriate training and/or experience in emergency medicine; failure to hire qualified and/or sufficiently trained and experienced personnel in the use of diagnostic equipment aboard the vessel; and failure to retain medical personnel without providing appropriate training and procedures for triage and referral to shore side facilities or physician). *Id*. and D.E. 1 at ¶40. And like Plaintiffs in the present case, *Franza* did not "allege any facts showing that [the cruise line] was put on notice of any harmful propensities or unfitness for employment of anyone on its medical staff." *Id*. The court also noted that "any alleged negligence by the medical staff in this incident involving [injured party] cannot sustain Plaintiff's

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

claim, as it would not establish prior notice of unfitness to [the cruise line]." *Id. See also Mumford*, dismissing the negligent hiring and selection count on nearly identical grounds.

Lastly, Plaintiffs' allegations that Oceania failed to hire medical personnel license to practice medicine in the jurisdiction of the ship also fail as a matter of law. *See Mumford* at \*5, citing *Barbetta,* 848 F.2d at 1371; *Rinker,* 753 F.Supp.2d at 1242–43. (". . . Maritime Law does not require that [the cruise line]  hire medical personnel who are licensed ... in the jurisdiction of the flag of the ship. Maritime Law simply requires that if [the cruise line] chooses to hire medical personnel, it must hire people that are competent and qualified").

For the reasons stated above, Plaintiffs' Count II, alleging negligent hiring and/or retention should be dismissed.

**C.     Plaintiffs' allegations premised on the theory of apparent agency[6] (Count IV) should be dismissed.**

**1.     Apparent agency is precluded under applicable legal authorities as it impermissibly seeks to establish vicarious liability for the alleged negligence of the shipboard physician.**

As Your Honor previously recognized in *Hill v. Celebrity Cruises, Inc.,* 2011 WL 5360247 at \*2 (emphasis added), when dismissing the plaintiff's apparent agency count with prejudice:

> Although Plaintiff may be able to conjure up more facts demonstrating [cruise carrier's] manifestations of the physician being their agent, *it would be illogical to hold [cruise carrier] liable under a theory of apparent agency* when clearly established maritime law precludes liability under a theory of actual agency. [Cruise carrier's] would have no incentive, and in fact would be discouraged, from providing doctors on board their cruises if they are held liable for them under a theory of apparent agency. Under current maritime law, cruise lines are afforded some protection from the mistakes of their on board physicians.

---

[6] Because Plaintiffs also fail to state a cause of action of negligence against Oceania, Count IV (Apparent Agency) and Count V (Joint Venture) which are not causes of actions but rather theories of liability that are dependent on Plaintiffs' contention that Oceania can be held vicariously liable for the alleged negligence of Dr. Bonilla, should be dismissed. See *Gayou* 2012 WL 2049431 at \*8, fn 4, citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir.2001); *Gavigan v. Celebrity Cruises, Inc.,* 2011 WL 7139353, at \*3 (S.D.Fla. Oct.12, 2011) (Seitz, J.); and *Barabe v. Apax Partners Europe Managers, Ltd.,* 359 F. App'x 82, 84 (11th Cir.2009).

Several other courts in this district have applied the same analysis when dismissing allegations premised on the theory of apparent agency. *See e.g. Balachander*, 800 F.Supp.2d at 1204 - 1205 ("Plaintiff's claims alleging apparent agency [is] akin to claims under the doctrine of *respondeat superior* and fail as a matter of law. Moreover, under any theory, it is inconsistent with the law of this Circuit to hold a cruise line liable for the negligence of a ship doctor."); *Wajnstat*, 2011 WL 465340 at *4 (internal citations omitted) ("the Rule of *Barbetta* does not allow for liability under an apparent agency theory since the doctrine of apparent agency is simply a form of *respondeat superior*. In other words, it does not matter whether the ship's physician is an actual agent, apparent agent, or otherwise, under maritime law the shipboard doctor's liability is not [to] be imputed to the carrier. The rationale of the court in *Barbetta* does not leave room for pleading around the rule, by labeling the legal theory "apparent agency" as opposed to "*respondeat superior*.")

*See also Huang v. Carnival Corp.,* 909 F. Supp. 2d at 1361("Absent an explicit manifestation by the ship owner countering the settled principle that medical staff are not their agents, it is unreasonable *as a matter of law* for a passenger to believe that the medical staff are the ship owner's agents.") (emphasis in original); *Hajtman*, 526 F. Supp. 2d at 1328-29 (Moore, J.) ("Given the long standing maritime principle that carriers and ship owners are not vicariously liable for the acts of their medical staff, which is based upon the logical notion that vacation cruise boat companies are not hospitals and have no expertise in establishing or controlling medical procedures, it is unreasonable for Plaintiff to believe that [the ship's nurse and doctor] were [the cruise line's] agents."); and *Warren v. Ajax Navigation Corp.,* 1995 AMC 2609 *7 (S.D. Fla. 1995) (Ryskamp, J) ("finding it "unreasonable" as a matter of law for plaintiff passenger to believe that shipboard doctor was an agent of the shipowner).

These decisions all stand for the proposition that if a shipowner cannot be held liable for the negligence of a physician who is *actually* an agent of the cruise line, then it cannot be held liable for the negligent acts of a physician who is merely *believed* to be an agent. Since maritime law precludes liability against the shipowner for the alleged negligence of a ship's physician, regardless of the label that a plaintiff choses (e.g. employee, agent or apparent agent), Count IV fails as a matter of law and should be dismissed with prejudice.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**2. Even disregarding the above authorities Plaintiffs still fail to state a claim under apparent agency.**

Some courts in this district have adopted the view that an apparent agency claim is not absolutely precluded under *Barbetta*. *See e.g. Hung Kang Huang,* 909 F. Supp. 2d at 1361, citing *Peterson*, 753 F. Supp. at 1248 (emphasis added) ("[w]hile Barbetta might not prohibit such agency claims as a matter of law, these claims are in practice *very difficult to establish*.") Notwithstanding, Judge Ungaro further noted that "[a]bsent an explicit manifestation by the ship owner countering the settled principle that medical staff are not their agents, it is unreasonable *as a matter of law* for a passenger to believe that the medical staff are the ship owner's agents." *Id*. (emphasis in the original). Plaintiffs in the present case have not alleged any facts to support that Oceania made any explicit manifestations that Dr. Bonilla was its agent, nor could they given that the explicit manifestations in the cruise ticket contract state the exact opposite[7]. Thus, even if the Court were to recede from its earlier ruling in *Hill v. Celebrity*, Plaintiffs' apparent agency claim would fail as a matter of law.

And even disregarding the above, and "assuming *arguendo* that [Plaintiffs'] Complaint establishes the first and second elements of apparent agency—*i.e.,* that [Oceania] made certain manifestations leading Plaintiff to reasonably believe that the medical staff were [Oceania] agents—Plaintiff[s] raises no allegations indicating how [they] "acted" or relied on [their] purported belief." *Mumford*, 2014 WL 1243786 at *6 (dismissing a practically identical apparent agency count). *See also Farrell,* where, like in *Mumford* the plaintiff[8] asserted the same allegations that Plaintiffs assert in the present case, e.g. that the physicians and nurses wore

[7] See Guest Ticket Contract at https://www.oceaniacruises.com/documents/US-TicketContract.pdf at para. 11 and attached hereto as Exhibit "B": "**THIRD PARTY PROVIDERS:** "We, as the Carrier, may also provide other services or facilities as a convenience to Guests and are not responsible for services, treatments and/or attendance provided or supplies given by the medical personnel . . . and/or any other concessionaire or other persons providing personal services to You. Such services are provided directly to You and the service providers shall not be considered to be acting under the control or supervision of Carrier. Should You avail Yourself of the medical or other professional services which the Ship's medical personnel may furnish upon Your request, You shall do so at Your sole risk and expense and We shall not be liable for the consequences of any examination, advice, diagnosis, medication or treatment thus furnished."

[8] Perhaps not coincidentally, Farrell was represented by the same law firm that represented the plaintiffs in *Mumford*, as well as Plaintiffs' in the present case (and in *RCL v. Jackson, Hung Kang Huang, Lapidus, Rinker, Balachander, Hajtman,* and *Zapata*).

ship's uniforms, were called ship officers by the cruise line, were paid a salary, spoke to plaintiff as though they had authority to do so by the cruise line, and that the cruise on provided literature that showed the doctors as being crew members and employees. *See* D.E. 1 at ¶ 50, *Farrell*, 2013 WL 178242 at *1. Judge Lenard, nonetheless, dismissed the apparent agency count, relying on the same consideration she noted in *Mumford*, that plaintiff provided no indication of how she acted or relied on her belief in the first place. *Id*.

Thus, in the event the Court were to disregard its decision in *Hill v. Celebrity* that the apparent agency count is barred under *Barbetta* and disregarding that there are no factual allegations in the Complaint supporting that Oceania made an explicit manifestation of agency, Plaintiffs' attempt to establish vicariously liability through the theory of apparent agency still fails.

**D.   Plaintiffs' allegations of joint venture (Count V) should be dismissed.**

   **1.   Joint venture is precluded under applicable legal authorities as it impermissibly seeks to establish vicarious liability for the alleged negligence of the shipboard physician.**

Several courts in this district have precluded joint venture actions between shipowner and shipboard personnel on the basis they run against the well-established precedent enunciated in *Barbetta. See e.g. Barnett* 2007 WL 1526658 at *4 (concluding that given the jurisprudence and the long-standing principle of uniformity in federal maritime law, the joint venture count could not be sustained without holding the ship owner vicariously liable for the alleged negligence of the ship's medical staff); *Hajtman,* WL 1803630 at *3 – *4 ("[m]edical staff exists on Defendant's ships as a convenience to the passengers, *not as a joint venture* to operate a medical facility," and "given 'the long-standing principle of uniformity in federal maritime law and the Supreme Court of Florida's thorough review of the existing case law on this question [whether a cruise line is vicariously liable for the medical malpractice of the shipboard doctor], a joint venture between Carnival and [the ship doctor] does not exist.'"); *Hesterly*, 515 F. Supp. 2d at 1286 (a cruise line is not a corporation, joint venture, or other association for professional activity by health care providers); and *Balachander*, 800 F.Supp.2d at 1204 ("Plaintiff's claims alleging apparent agency, agency by estoppel, and joint venture are akin to claims under the doctrine of *respondeat superior* and fail as a matter of law.")

**2. Even disregarding the above authorities, Plaintiffs still fail to state a claim under joint venture.**

Although not all courts in this district have adopted the view that a joint venture claim[9] vis-à-vis ship owner and shipboard physician is automatically precluded under maritime law, courts examining similar allegations as those in Plaintiffs' Complaint have dismissed the claims for failure to state a cause of action. For example, in *Farrell, Hung Kang Huang* and *Mumford*, where the joint venture claims were materially identical to the joint venture claim in the present case, this Court noted that the statements supporting the claim were mere recitals of the elements of a joint venture, and thus not entitled to the presumption of truth.

Concerning allegations of joint proprietary interest and joint control, these courts noted that they could not plausibility satisfy the elements.

> Plaintiff alleges that "[cruise line] had the interest in the money it devoted to setting up the medical facility and Defendants [medical providers] had a proprietary interest in the time and labor expended in operating the ship's medical facility." *Id.* ¶ 54. But a joint proprietary interest "requires joint ownership of the subject matter of the contract," *Gibson v. NCL (Bahamas) Ltd.,* No. 11–24343, 2012 WL 1952667, at *8 (S.D.Fla. May 30, 2012), whereas all that Plaintiff pleads is a division of responsibilities. He further states, without any support, that "a duty to share losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the other the necessary capital." *Id.* Plaintiff's allegations fall far short of the standard set in maritime decisions permitting joint venture claims, the vast majority of which concerned onshore excursion companies sharing a symbiotic ticketing and programming relationship with the cruise lines whose passengers they served. *See, e.g., Gibson,* 2012 WL 1952667, at *8; *Gentry,* 2011 WL 4737062, at *7.

*Mumford,* 2014 WL 1243786 at *8, citing  *Farrell,* 2013 WL 178242, at *5–6  and noting it "reject[ed] [the] joint venture claim materially identical to that in *Huang* and [*Mumford*]).

For the reasons states above, Plaintiffs' Joint Venture count should be dismissed.

---

[9] In order to establish liability on a theory of "joint venture," a plaintiff must prove (1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained. *Huang*, 2012 WL 6621173 at *5, citing *Fojtasek,* 613 F.Supp.2d at 1357.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

**D. Plaintiffs' claim of third-party beneficiary breach of contract (Count VI) should be dismissed.**

A party making a third-party beneficiary claim must allege: (1) the existence of a contract in which the claimant is not a party; (2) an intent by the contracting parties that the contract primarily and directly benefit the plaintiff; (3) a breach of that contract by one of the parties; and (4) damages resulting from the breach. *Hung v. Carnival*, 909 F. Supp. At 1362, citing *Rinker v. Carnival Corp.,* 753 F.Supp.2d at 1243–44 (S.D.Fla.2010).

The principal reason why Plaintiffs' claim fails is for the same reason articulated in *Hung*, *Rinker* and recently *Farrell* that "[a]lthough [the Complaint] has alleged the existence of a contract, intended to directly benefit Plaintiff and passengers, the breach it alleges is by the medical staff Defendants, not [the cruise line]." Plaintiffs allege that the entity that breached the agreement was Dr. Bonilla, not Oceania. D.E. 1 at ¶¶77 & 79. "To hold [Oceania] liable for a breach by the other contracting parties, as Plaintiff[s] seek[] to do, would turn contract law on its head" *Id.* citing *Rinker,* 753 F.Supp.2d at 1244. This reason, by itself, warrants dismissal.

In addition to the above stated grounds, "maritime law will not support a passenger's breach of contract claim unless there is an express provision in the contract of carriage guaranteeing safe passage". *Gentry v. Carnival*, 2011 WL 4737062, *8 (S.D. Fla. 2011), citing *Doonan,* 404 F.Supp.2d at 1372. Plaintiffs make no such allegation in the Complaint. Instead, the Complaint at best alleges the agreement implied a benefit to Plaintiff. This, however, is insufficient to overcome dismissal as "maritime law will not imply a provision guaranteeing safe passage." *Id* citing *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1320 (M.D.Fla.2002) and *Jackson v. Carnival Cruise Lines, Inc.,* 203 F.Supp.2d 1367, 1377 (S.D.Fla.2002).

The court in *Gentry* rejected a similar claim of breach of third party beneficiary contract for similar reasons. In doing so, the court cited the above cases and noted that "the law prohibits an implied contractual duty on a cruise line in favor of a fare-paying passenger." *Id* at *9. The Gentry court further added that the plaintiff did not allege the cruise line breached any contractual provisions nor even that it owed any obligations to plaintiff under a contract. *Id.* The same grounds supporting dismissal equally apply here.

Lastly, the allegations that Plaintiffs assert to show that Dr. Bonilla breached his contract (i.e. that he was not qualified, not internationally accredited, and did not "provide the highest quality of shipboard medical care," D.E. 1 at ¶77) are devoid of supporting facts. And even if they were

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

supported by facts, the allegations would still not be actionable against Oceania under *Barbetta* and its progeny.

**E. Plaintiffs' request for damages for loss of consortium/services is precluded under general maritime law.**

As this Honorable court recently recognized, "General maritime law does not authorize loss of consortium claims." *Gandhi v. Carnival Corp.*, 2014 WL 1028940, *4 - 5 (S.D. Fla. Mar. 14, 2014) (Moreno, J), citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir.1994); *Nichols v. Petroleum Helicopters, Inc.*, 17 F.3d 119, 122–23 (5th Cir.1994); *Frango v. Royal Caribbean Cruises, Ltd.*, 891 So.2d 1208 (Fla.Dist.Ct.App.2005). In dismissing with prejudice the loss of consortium claim, the court further noted:

> Following *Miles*, courts have consistently held that general maritime law does not provide for loss of society or loss of consortium in cruise line passenger injury cases. *See In re Everglades Island Boat Tours, LLC*, 484 F.Supp.2d 1259, 1263 (M.D.Fla.2007); *Albertelli v. NCL Corp.*, 2008 U.S. Dist. LEXIS 57789, 2008 WL 2949513 (S.D.Fla. July 29, 2008) ("A claim for loss of consortium is not permitted under general maritime law, and therefore must be dismissed."); *Martinez v. Dann Ocean Towing, Inc.*, 2005 U.S. Dist. LEXIS 20946 (M.D.Fla.2005); *Isberner v. Celebrity Cruises, Inc.*, 2006 U.S. Dist. LEXIS 94934, 2006 WL 4005569 (S.D.Fla.2006) ("[T]he Eleventh Circuit has repeatedly held that maritime law does not permit "recovery for loss of society or consortium in personal injury cases.") (*citing Lollie v. Brown Marine Serv.*, 995 F.2d 1565, 1565 (11th Cir.1993)).

*Id*., 2014 WL 1028940 at *4 – 5.

> For the reasons stated above, the Court should dismiss Count VIII with prejudice.

**F. The Court should strike the request for punitive damages because Plaintiffs fail to allege facts for which punitive damages may be granted as relief.**

Although the United States Supreme Court recently held that punitive damages are available under federal maritime law, it also limited these damages to instances where they were caused by "wanton, willful, or outrageous conduct." *See Doe v. Royal Caribbean Cruises, Ltd.*, 2012 WL 4479084 (S.D. Fla. Sept. 28, 2012) (Scola, J),citing *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 411, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009). Plaintiffs do not allege that their damages were caused by Oceania's wanton, willful, or outrageous conduct.

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690

Accordingly, their demand for punitive damages "must be stricken from the complaint" because the allegations "do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful, or outrageous conduct." *Id.,* citing *Baker v. Carnival Corp.,* 2006 WL 3519093 (S.D. Fla. Dec. 5, 2006) (Huck, J).

For the reasons stated above, Plaintiffs' request for punitive damages should be stricken.

## III.    Conclusion

For the reasons stated above, Oceania respectfully submits it is entitled to dismissal of the action as against it.

Respectfully submitted,

/s/Carlos J. Chardon
Jerry D. Hamilton
Florida Bar No. 970700
Carlos J. Chardon
Florida Bar No. 517631
Matthew P. O'Brien
Florida Bar No. 10072
HAMILTON, MILLER & BIRTHISEL, LLP
*Attorneys for Defendant, Celebrity Cruises*
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131-2332
Telephone:    (305) 379-3686
Facsimile:    (305) 379-3690

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 21, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/ Carlos J. Chardon
Carlos J. Chardon

## SERVICE LIST

CASE NO. 1:14-CV-21340-FAM

| | |
|---|---|
| Jason Margulies<br>Florida Bar No. 57916<br>jmargulies@lipcon.com<br>Lipcon, Margulies, Alsina &<br>Winkleman, P.A.<br>One Biscayne Tower, Suite 1776<br>2 South Biscayne Boulevard<br>Miami, Florida 33131<br>Tel. (305) 373-3016<br>Fax (305) 373-6204<br>***Attorney for Plaintiff*** | Jerry D. Hamilton, Esq.<br>Florida Bar No. 970700<br>jhamilton@hamiltonmillerlaw.com<br>Carlos J. Chardon, Esq.<br>Florida Bar No. 517631<br>cchardon@hamiltonmillerlaw.com<br>Matthew P. O'Brien<br>Florida Bar No. 10072<br>mobrien@hamiltonmillerlaw.com<br>Hamilton, Miller & Birthisel, LLP<br>150 Southeast Second Avenue<br>Suite 1200<br>Miami, Florida 33131<br>Telephone:     (305) 379-3686<br>Facsimile:     (305) 379-3690<br>***Attorneys for Defendants*** |

HAMILTON, MILLER & BIRTHISEL LLP
150 Southeast Second Avenue, Suite 1200 · Miami, Florida 33131 · Telephone: 305-379-3686 · Facsimile: 305-379-3690