Case 1:10-cv-22018-JEM   Document 71   Entered on FLSD Docket 05/30/2011   Page 1 of 12

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  10-22018-CIV-MARTINEZ-BROWN**

NANCY THOMAS,

    Plaintiff,

vs.

CARNIVAL CORPORATION, DOCTOR EL
WI SAYED-TANANI, NURSE MARYAM
WADEE, NURSE NINETTE WILLIAMS,
NURSE CHERYL MACFARLANE, DOCTOR
DOE, NURSE DOE 1 THROUGH 3,

    Defendants.

_____/

**ORDER**

THIS CAUSE came before the Court upon Defendant Carnival Corporation's Motion to

Dismiss **(D.E. No. 15)**.

**I.  Background**

Defendant Carnival Corporation ("Defendant Carnival" or "Carnival") was in the

business of providing vacation cruises and advertized that it would have a competent physician

and a ship's hospital on board.  Complaint ¶ 4(g).

On or about June 18, 2009 through June 22, 2009, Plaintiff Nancy Thomas ("Plaintiff" or

"Thomas") and several family members were paying passengers on the vessel Carnival

Fascination. Complaint ¶ 19.  They were on a four-day cruise from Jacksonville, Florida to the

Bahamas and back. *Id.*  On the morning of June 20, 2009, Thomas went to the medical

department onboard the M/V Fascination complaining of several symptoms, notably severe lower

right pain radiating to her abdomen. Complaint ¶ 20. Thomas was interviewed by Nurse Maryam Wadee ("Defendant Wadee"), given Pepto Bismal, and told to return at 4:00 p.m. to see the doctor. Complaint ¶ 20. Nurse Wadee's preliminary diagnosis included possible appendicitis. Complaint ¶ 20. Thomas returned at 2:00 p.m. with continued complaints of pain. Complaint ¶ 21. She was provided with additional pain medication. Complaint ¶ 21.

Thomas returned again at 4:00 p.m., Complaint ¶ 21, but she did not see Dr. Elwi Sayed-Tanani ("Defendant Dr. Sayed-Tanani") until around 6:41 p.m. that evening. Complaint ¶ 22. Defendant Dr. Sayed-Tanani prescribed Thomas morphine for her pain then and prescribed more morphine at 9:50 p.m. when Thomas returned again, complaining the pain had grown more severe. Complaint ¶¶ 22, 23. Thomas returned again to the medical department with worsening symptoms at 4:00 p.m. on June 21, 2009. Complaint ¶ 24. Nurse Cheryl MacFarlane ("Defendant MacFarlane") saw her and provided more pain medication. Complaint ¶ 24. At that time, Thomas remained in the medical department under the care of the medical department staff. Complaint ¶ 24.

Defendant Dr. Sayad-Tanani saw Thomas around 7:41 p.m. and diagnosed a possible case of appendicitis. Complaint ¶ 24. He recommended that Thomas visit the emergency room upon returning to Jacksonville the next morning. Complaint ¶ 24. Thomas was advised that the medical department staff would arrange to have an ambulance waiting for her at the port the next morning. Complaint ¶ 24. Jacksonville paramedics picked up Thomas from the medical department when the ship arrived at port around 7:30 a.m. on June 22, 2009. Complaint ¶ 25.

In the emergency room at Shands Hospital in Jacksonville, Thomas was immediately diagnosed with a burst appendix, which required immediate surgery. Complaint ¶ 25. The

-2-

hospital nevertheless had to delay the surgery because the pain medications given by the Carnival medical department staff had lowered Thomas's blood pressure to dangerous levels. Complaint ¶ 25. Following surgery, Thomas remained in the hospital in critical condition for three weeks. Complaint ¶ 25.

Plaintiff alleged that Carnival had the ability to monitor and control the actions of anyone working in the medical department via telephone, videoconference, Skype or other similar technology, which the Plaintiff terms "Face to Face Telemedicine." Complaint ¶ 10. Plaintiff also alleged that Carnival charges for medical services and is "[t]hereby in the business of providing medical services to passengers for profit, and/or . . . in the business of operating a floating hospital for their own profit." Complaint ¶ 4(h). Plaintiff also asserts that the medical staff onboard the ship wore ship's uniforms, ate with the crew, were paid a salary by Carnival, and never represented that they were not agents of Carnival. Complaint ¶ 52.

Plaintiff brought the above-captioned action alleging negligence against Carnival (Count I), negligence against Carnival for the acts of the medical defendants based on respondeat superior (Count II), negligence against Carnival for the acts of the medical defendants based on vicarious liability and apparent agency (Count III), a joint venture between Carnival and the medical defendants (Count IV), negligence against Dr. Sayed-Tanani (Count V), negligence against the defendant nurses (Count VI), and fraud against all Defendants (Count VII).

## II. Standard

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *Lopez*

-3-

*v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Factual allegations must be enough to raise a right to relief above the speculative level . . .on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

### III. Analysis

An action involving the alleged malpractice of a doctor on the high seas falls under the purview of federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333. With admiralty jurisdiction comes the application of substantive maritime law. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 964 (1986). "Federal maritime law is an amalgamation of federal legislation, federal common law, and state maritime law." *Carnival Corp. v. Carlisle*, 953 So.2d 461, 464 (Fla. 2007). Courts should adhere to principles of harmony and uniformity when applying maritime law. *Id.* at 470; *see also Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902 (11th Cir. 2004) (noting that "the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime

-4-

law").

## A.      Vicarious Liability pursuant to Respondeat Superior

With respect to the liability of a carrier for an onboard doctor, the former Fifth Circuit held as follows:

> When a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier.

*Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369 (5th Cir. 1988). *Barbetta* was decided on the grounds of more than a hundred years' of precedent, as well as on the basis that the cruise line lacks control over the doctor-patient relationship where the doctor is an independent contractor contracting with the passengers and where the boat does not possess expertise in supervising the doctor in his practice of medicine. *Id.* at 1369-70. *Barbetta* still represents the majority view, and *Barbetta*'s holding regarding vicarious liability was recently, if reluctantly, upheld by the Florida Supreme Court. *Carnival Corp. v. Carlisle*, 953 So.2d 461, 470-71 (Fla. 2007). The Court notes that improvements in monitoring technology, such as Skype, do not provide the ship's crew with additional medical expertise. Accordingly, having considered Plaintiff's arguments in favor of overturning *Barbetta*, this Court will nevertheless adhere to the majority rule presently in force in this circuit.

Notably, however, Plaintiff has filed a Notice of Supplemental Authority in which Plaintiff asserts that the newly passed statutory language on Passenger Vessel Safety and Security Requirements, 46 U.S.C. § 3507, operates to overturn *Barbetta*. In pertinent part, that statute provides as follows:

Case 1:10-cv-22018-JEM   Document 71   Entered on FLSD Docket 05/30/2014   Page 6 of 12

(d) Sexual assault.--The owner of a vessel to which this section applies shall--

(1) maintain on the vessel adequate, in-date supplies of anti-retroviral medications and other medications designed to prevent sexually transmitted diseases after a sexual assault;

(2) maintain on the vessel equipment and materials for performing a medical examination in sexual assault cases to evaluate the patient for trauma, provide medical care, and preserve relevant medical evidence;

(3) make available on the vessel at all times medical staff who have undergone a credentialing process to verify that he or she--

(A) possesses a current physician's or registered nurse's license and--

(i) has at least 3 years of post-graduate or post-registration clinical practice in general and emergency medicine; or

(ii) holds board certification in emergency medicine, family practice medicine, or internal medicine;

(B) is able to provide assistance in the event of an alleged sexual assault, has received training in conducting forensic sexual assault examination, and is able to promptly perform such an examination upon request and provide proper medical treatment of a victim, including administration of anti-retroviral medications and other medications that may prevent the transmission of human immunodeficiency virus and other sexually transmitted diseases; and

(C) meets guidelines established by the American College of Emergency Physicians relating to the treatment and care of victims of sexual assault;

(4) prepare, provide to the patient, and maintain written documentation of the findings of such examination that is signed by the patient; and

(5) provide the patient free and immediate access to--

(A) contact information for local law enforcement, the Federal Bureau of Investigation, the United States Coast Guard, the nearest United States consulate or embassy, and the National Sexual Assault Hotline program or other third party victim advocacy hotline service; and

(B) a private telephone line and Internet-accessible computer terminal by which the individual may confidentially access law enforcement officials, an attorney, and the information and support services available through the National Sexual Assault Hotline program or other third party victim advocacy hotline service.

46 U.S.C. § 3507(d).

Plaintiff asserts that the requirement in § 3507(d)(3) that the ship provide medical personnel overrules the holding in *Barbetta* that a ship is not required to provide medical personnel. That portion of *Barbetta* is not at issue in this case, however. Specifically, whether

Defendant provided medical personnel is not at issue in this case. Defendant did provide medical personnel. *Barbetta*, like § 3507(d)(3), provides that a carrier has a duty when it comes to employing a doctor who is competent and duly qualified. *See Barbetta*, 848 F.2d at 1369. Section 3507(d)(3) lays out additional requirements regarding the qualifications of a ship's medical personnel. Plaintiff has not, however, asserted that the medical personnel who treated her failed to hold those qualifications. Plaintiff's claim for negligent hiring, which is cognizable under *Barbetta*, is not at issue in this motion to dismiss. Moreover, § 3507(d)(3) does not establish that common carriers are now "in the business of treating sick passengers." *See Barbetta*, 848 F.2d at 1370. It does not require that the carriers require medical personnel to carry out any particular course of treatment with victims of sexual assault. It merely requires, as *Barbetta* does for those carriers who do employ doctors, that the medical personnel possess certain qualifications. Nothing in § 3507(d)(3) contradicts the rule in *Barbetta* that is relevant in this case, namely that a ship owner is not liable for the negligence of a duly qualified doctor. *See Wilhelm Pudenz, GmbH v. Littlefuse Inc.*, 177 F.3d 1204, 1210 (11th Cir. 1999) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.") (quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection*, 474 U.S. 494, 501 (1986)). Accordingly, the Court concludes that the statute does not overrule the relevant portion of *Barbetta*.

**B.     Vicarious Liability pursuant to Apparent Agency**

"Courts in the Eleventh Circuit sitting in admiralty have held that Federal Maritime Law embraces the principles of agency and that the existence of an agency relationship is a question

-7-

of fact." *Warren v. Ajax Navigation Corp.*, 1995 AMC 2609 (S.D. Fla. 1995) (citing *Archer v. Trans/American Servs., Ltd.*, 834 F.2d 1570, 1573 (11th Cir. 1988)). "It is permissible for a court sitting in Admiralty[] to hear vicarious liability claims premised upon the theory of apparent agency." *Hajtman v. NCL (Bahamas) Ltd.*, 526 F. Supp. 2d 1324, 1328 (S.D. Fla. 2007). Apparent agency is established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) such belief was reasonable and 3) the claimant reasonably acted on such belief to his detriment. *Id.* (internal citations omitted).

"A cruise line's representation that a ship has a doctor aboard does not, by itself, establish apparent agency." *Suter v. Carnival Corp.*, No. 07-20298-CIV, 2007 WL 4662144, at *6 (S.D. Fla. May 14, 2007) (citing *Warren*, 1995 AMC at 2612-13). "A plaintiff must demonstrate additional affirmative acts taken by the cruise line to 'hold out' a doctor to be its agent." *Suter*, 2007 WL 4662144, at *6.

In this case, Plaintiff points to allegations that the ship advertized that it had medical personnel and "showed" in the literature that the nurses were crew members, that the ship's medical personnel wore uniforms, ate with the crew, were subject to the commands of ship officers, were paid a salary by Defendant, spoke to Plaintiff "as though they had authority to do so by Carnival," and admitted Plaintiff to the ship's medical facility as evidence of apparent authority. Plaintiff also asserted that Dr. Sayed-Tanani was called a ship's officer. *See Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1372 (S.D. Fla. 2005) (holding that where a doctor "wore a Carnival uniform," "ate with the ship's crew," "[was] held out to the passengers as an officer of the ship" and "was addressed by the ship's crew as an officer of the ship," the plaintiff

stated a claim for apparent authority). Although the Complaint offers little in terms of actions *by Carnival* that "held out" the medical personnel as agents of the ship, it does allege in one place that the doctor was called a ship's officer and that the ads for the crews "showed" that the nurses were crew members and employees. For the purposes of a motion to dismiss, this is sufficient to show the first two elements of apparent authority. *See Suter*, 2007 WL 4662144, at *7.

With respect to the third element of apparent authority, Plaintiff "must also show that she relied on or changed her position in reliance on her alleged belief that [medical personnel were] Carnival's agent[s]." *Suter*, 2007 WL 4662144, at *7. To do so, "a party must show that, when dealing with the supposed agent, he [or she] has relied on the agent's authority in good faith, in the exercise of reasonable prudence." *Id.* (quoting *Wells Fargo Bus. Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 945 (5th Cir. 1982)). "A party may demonstrate such reliance by showing a change of position." *Suter*, 2007 WL 4662144, at *7. In this case, Plaintiff asserts conclusory allegations that she relied on the representations regarding agency. *See* Complaint ¶¶ 17, 54. The closest thing to a change in position she asserts is that "[t]his reasonable reliance was detrimental because it significantly delayed Plaintiff from receiving the proper medical treatment." Complaint ¶ 56. However, it is not clear how the representations regarding agency caused Plaintiff to change her position in a way that delayed her receiving proper medical treatment. The majority of the representations regarding agency that Plaintiff has alleged became apparent only after she was onboard the ship, some of them not occurring until after she was already sick. Plaintiff has not pointed to anything she could have or would have done differently, which might have resulted in her timely receiving proper medical treatment, if Carnival had never manifested that the medical personnel were its agents. Plaintiff has not even alleged that

she would not have bought the cruise ticket if she had known that the doctor on board was an independent contractor. Accordingly, she has not pled the reliance necessary to show apparent authority. *See Suter*, 2007 WL 4662144, at *8 (dismissing negligence claim on the theory of apparent agency because of failure to plead reliance).

## C.    Joint Venture

Plaintiff's joint venture claim is based on the allegation that Defendant Carnival and the medical Defendants were operating a joint venture with respect to the medical services onboard the ship. "[I]n contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." *Kislak v. Kreedian*, 95 So.2d 510, 515 (Fla. 1957). Plaintiff has alleged the first, second, third, and fourth elements in her complaint. For the fifth element, however, she asserts that as a matter of law the medical Defendants were sharing losses because they ran the risk of using their skill in vain.

"In certain situations, where one party supplies labor and skill, the other supplies capital, and both agree to share in the profits of the venture, Florida courts have concluded an agreement to share losses exists as a matter of law 'since in the event of a loss, the party supplying the knowhow would have exercised his skill in vain and the party supplying the capital investment would have suffered a diminishment thereof.'" *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (11th Cir. 2002) (quoting *Fla. Tomato Packers, Inc. v. Wilson*, 296 So.2d 536, 539 (Fla. App. 1974)). That situation does not arise, however, when the "party supplying the knowhow" will receive payment regardless of the success of the venture. *Williams*, 314 F.3d at 1276. In this case,

Plaintiff's complaint alleges repeatedly in several counts that the medical Defendants were paid salaries. At no time does she allege that they ran the risk of not being paid for their efforts. Accordingly, she has not alleged the final element required for a joint venture.[1]

**D.      Fraud**

Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for fraud claims and requires that the circumstances constituting fraud be pled with "particularity." Fed. R. Civ. P. 9(b). The Eleventh Circuit has stated that Rule 9(b)'s requirements are met if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)). Rule 9(b) does not, however, require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made. *Id.* Instead it states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Thus, under Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro*, 544 F.3d at 972.

Plaintiff has not identified who, specifically, made the false representations that the

---

[1] Because Plaintiff has repeatedly alleged facts negating that element, and because Plaintiff's entire basis for asserting the element existed lay in law rather than fact, the Court considers an amendment of Count IV to be futile.

medical Defendants had the proper licenses to provide medical care. She has not alleged the time and place of each oral representation, instead alleging generally that the statements occurred "at all material times." She has not alleged the precise statements made, to which medical Defendants they referred, or the manner in which the statements misled her. Although she has alleged that she suffered damages, she has not alleged what the Defendants obtained as a consequence of the fraud. Accordingly, she had not met the pleading requirements of Rule 9. Therefore, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendant Carnival Corporation's Motion to Dismiss **(D.E. No. 15)** is **GRANTED**. Counts II, III, IV, and VII are dismissed.

2. Plaintiff's Motion for Leave to Amend Complaint **(D.E. No. 34)** is **GRANTED IN PART**. On or before April 12, 2011, Plaintiff may file an amended complaint correcting the deficiencies in noted in Count III and VII. Plaintiff may also assert a claim for gross negligence, but she must assert separate counts for gross negligence against Defendant Carnival and against the medical Defendants, so that Defendants will have a clear understanding of the bases asserted for liability.

DONE AND ORDERED in Chambers at Miami, Florida, this 29 day of March, 2011.

_____

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record