UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21340-CIV-GAYLES/TURNOFF

DIANE URE and THOMAS URE, JR.,

    Plaintiffs,

v.

OCEANIA CRUISES, INC. and FABIAN
BONILLA, M.D.,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant Oceania Cruises, Inc.'s Motion to Dismiss Plaintiffs' Complaint [ECF No. 7]. The Court has considered the parties' written submissions and applicable law. Based thereon, the Court grants the Motion.

## BACKGROUND [1]

Plaintiffs Diane Ure ("Mrs. Ure") and Thomas Ure, Jr. ("Mr. Ure") bring this action against Defendants Oceania Cruises, Inc. ("Oceania") and Fabian Bonilla, M.D. ("Dr. Bonilla"). Plaintiffs allege that while aboard Oceania's ship, Dr. Bonilla, the ship physician, evaluated and treated Mrs. Ure for a gastrointestinal illness. After several days, Mrs. Ure's condition deteriorated, necessitating emergency medical treatment. Oceania recommended Bay View Hospital in Barbados and arranged for Mrs. Ure's transfer and on-shore treatment. Bay View mismanaged Mrs. Ure's treatment and/or

---

[1] The Court takes the allegations from the Complaint [ECF 1] as true for purposes of a Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

was unable to adequately provide emergency care.  Mrs. Ure suffers permanent injury from her illness.

On April 15, 2014, Plaintiffs filed their Complaint asserting seven claims against Oceania and one against Dr. Bonilla.[2]  On May 21, 2014, Oceania moved to dismiss all of Plaintiffs' claims against it for failure to state a claim.

## DISCUSSION

### Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than unadorned, the defendant –unlawfully-harmed-me accusations." *Id*. (alteration added)(quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added)(citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable

---

2    The Court permitted Plaintiffs to amend their Complaint to add jurisdictional allegations regarding Dr. Bonilla.  The parties agreed, however, to have the Court address Oceania's motion to dismiss the claims against it in the Original Complaint as the Amended Complaint has no additional or different allegations relating to Oceania.

to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## I.     Cruise Ship Duties

Plaintiffs' claims all relate to Dr. Bonilla and/or BayView's treatment of Mrs. Ure. Plaintiffs attempt to hold Oceania responsible for Dr. Bonilla and Bay View's actions through multiple theories including 1) respondeat superior (Count I); 2) negligent hiring/retention (Count II); 3) negligence (Count III); 4) apparent agency (Count IV); 5) joint venture (Count V); 6) third party beneficiary (Count VI); and 7) loss of consortium (Count VIII).

A cruise ship does not have a duty to maintain a doctor on board for the benefit of its passengers, nor does it have a duty to "exercise reasonable care to furnish such aid and assistance [to sick or injured passengers] as ordinarily prudent persons would render under similar circumstance." *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1371 (5th Cir. 1988). In the event a cruise ship employs an onboard doctor, its only duty is to "choose a doctor who is competent and duly qualified." *Id.*

A ship owner's responsibility for the negligence of a doctor, as opposed to another crew member, is different because of the doctor's unique relationship with the passengers. "Although shipboard medical personnel serve as part of the ship's crew and are subject to the master's directions and orders as to non-medical matters . . . [a cruise ship's physician] is not under the exclusive control of the ship's master, at least with regard to his or her medical decisions and actions." 10-IX Benedict on Admiralty Section 9.03 (2010); *see also Barbetta*, 848 F.2d at 1371 (A "ship owner lacks both 1) the expertise to meaningfully evaluate and, therefore, control a doctor's treatment of his patients and 2) the power, even if it had the knowledge, to intrude into the physician-patient relationship."). When an ill passenger visits the ship doctor, they enter into a

private relationship, that of patient and physician.  This relationship does not include the ship.  *See Wajnstat v. Oceania Cruise, Inc.*, No. 09-CV-21850, 2011 WL 46540 at *2 (S.D. Fla. Feb. 4, 2011)("the scope of treatment by a ship's doctor is solely within the control of the passenger . . . it is the passenger's choice whether to employ the ship's doctor, employ another doctor who may happen to be aboard, treat themselves, or go without treatment, and if the passenger decides to employ the ship's doctor it is the passenger who decides whether to follow the doctor's directions and course of treatment");  *see also Barbetta*, 848 F.2d at 1372 ("[E]ven though a ship's doctor is provided for the passenger's convenience, no passenger is required to use the doctor's services; consequently . . . a carrier must honor a passenger's decision not to use the ship's doctor and, when necessary, discharge its duty to provide aid in some other way.").  As a result, a ship's doctor's negligence in treating a passenger "will not be imputed to the carrier."  *Barbetta,* 848 F.2d at 1369; *see also De Zon v. American President Lines, Ltd.,* 318 U.S. 660, 666 n.2 (1943)("The law does not put the business of treating sick passengers into the charge of common carriers, and make them responsible for the proper management of it.").  This Court has repeatedly held the same under facts similar to this action.  *See Aronson v. Celebrity Cruise, Inc.*, No. 12-CV-20129, 2014 WL 3408592 (S.D. Fla. May 9, 2014); *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-CV-21897, 2013 WL 1296298 (S.D. Fla. Mar. 27, 2013); *Mumford v. Carnival,* No. 13-CV-22604, 2014 WL 1243786 (S.D. Fla. Mar. 18, 2014);  *Lapidus v. NCL America, LLC,* No. 12-CV-21183, 2012 WL 219055 (S.D. Fla. June 14, 2012); *Wanjstat,* 2011 WL 465340 at *2.

**II.    Respondeat Superior.**

In Count I, Plaintiffs assert that Oceania is vicariously liable for Dr. Bonilla's negligence based on respondeat superior.  As discussed above, a ship owner is not liable for the negligence of the ship's doctor.  *See* supra § I.  "General maritime law does not impose liability under the doctrine

of respondeat superior upon a carrier or ship owner for the negligence of a ship's doctor who treats the ship's passengers." *Barbetta*, 848 F.2d at 1372. Accordingly, Count I fails as a matter of law and is dismissed with prejudice.

**III.   Negligent Hiring/Retention**

In Count II, Plaintiffs assert a negligent hiring and/or negligent retention claim against Oceania. To state a claim for negligent hiring/retention, "plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee." *Mumford*, 2014 WL 1243786 at *4 (quoting *Stires v. Carnival*, 243 F.Supp.2d 1313, 1318 (M.D. Fla. 2002)). Although a ship owner need not employ a doctor, if it elects to do so, that doctor must be competent. A ship is only liable, however, if it knew about the doctor's unfitness. *Id.*

Plaintiffs make no allegations that Oceania knew that Dr. Bonilla was somehow unfit to be a doctor onboard the ship. Indeed, the only allegation they make with respect to Dr. Bonilla's qualifications is that he was not licensed to practice medicine in the jurisdiction of the ship. This alone is insufficient to state a claim. General maritime law "does not require that [a ship owner] hire medical personnel who are licensed . . . in the jurisdiction of the flag of the ship." *Mumford* at *5. As a result, Plaintiffs fail to state a claim and Count II is dismissed without prejudice.

**IV.   Negligence**

In Count III, Plaintiffs allege that Oceania was negligent in recommending Bay View to Mrs. Ure. This claim is without merit.

As detailed with respect to Count I, a cruise ship has no duty to provide medical care to its passengers – whether at sea or on land. "Because a cruise ship has no duty to provide doctors or other medical personnel to its passengers, it 'cannot be held liable for allegedly failing to fulfill a duty to provide medical care that it does not owe to passengers, regardless of whether the passengers

are on the ship or on land . . .'" *Aronson v. Celebrity Cruises, Inc.*, No. 12-CV-20129, 2014 WL 3408582 (S.D. Fla. May, 2014)(quoting *Lapidus v. NCL America, LLC*, No. 12-CV-21183, 2012 WL 2193055, at *4 (S.D. Fla. June, 2012). In addition, a cruise ship has no duty to identify appropriate land based medical facilities. *See Wanjstat*, 2011 WL 465340 at *1 (dismissing plaintiff's claim for failing to identify appropriate land based medical facilities because "[c]ruise ships are not floating hospitals); *Gliniecki v. Carnival,* 632 F.Supp.2d 1205 (S.D. Fla. 2009) (dismissing claim for failure to transport passenger to a suitable hospital dismissed because a ship is not a "medical service provider" and "has no duty to provide medical transportation policies or services.").

The Court also finds Plaintiffs' allegations that Oceania owed them a duty based on language in the Passenger Bill of Rights ("PBOR") are without merit. Although the PBOR states that passengers have the right to have "professional emergency medical attention," it is not a mandatory policy shaping maritime law. Indeed, "a carrier is not required to promulgate or enforce particular medical directives regarding patient care, and it is thus not negligent if it fails to do so." *Mumford*, 2014 WL 1243786 at *4. Indeed, even where Congress has adopted certain safety practices – which it has not done for the PBOR - courts routinely hold that these corporate safety policies do not impose a duty on ship owners or form the basis of a negligence claim. *See Calderon v. Offen*, 2009 WL 349771 at *4 (S.D. Fla. 2009)("As for the ship safety manual and the defendants' corporate safety practices, now required by the United States' adoption of the [ISM] code, this Court agrees with another District Court that Congress merely desired to participate with other maritime nations in achieving safety goals, but did not intend to change long established rules of law which govern liability and its allocation in general maritime law."). The Court finds that the PBOR does not impose a duty on Oceania under maritime law and therefore it cannot form a basis for Plaintiffs' negligence claims. As a result, Count III is dismissed with prejudice.

## V.     Apparent Agency

In Count IV, Plaintiffs seek to hold Oceania responsible for Dr. Bonilla's negligence based on a theory of apparent agency.  To state a claim based on apparent agency, plaintiffs must allege that 1) an alleged principal made a third party believe that an alleged agent had authority to act for the benefit of the principal; 2) such belief was reasonable; and 3) the claimant reasonably acted on such belief to his detriment. *See Mumford,* 2014 WL 1243786 at *6.  Plaintiffs make only conclusory allegations that they relied on Oceania's purported representation that Dr. Bonilla was its agent.  This is not enough to state a claim.  Rather, Plaintiffs must allege more – for example that they would have changed their course of conduct had they known Dr. Bonilla was an independent contractor.  *See Id.* at *6-7 ("Plaintiff has not alleged how she relied upon the alleged apparent agency because, for example, she has not alleged how, had she known that the doctor(s) and nurses were not Carnival's agents, she would have rejected the medical staff's advice or treatment"); *Rinker*, 836 F.Supp.2d at 1319 ("Plaintiff's husband does not state that, had he known the doctor and nurses were independent contractors, he would not have sought their medical help for his wife. Thus it is not clear how he relied.").  Accordingly, Count IV is dismissed without prejudice.

## V.     Joint Venture

In Count V, Plaintiffs allege Oceania and Dr. Bonilla were engaged in a joint venture to provide medical services to passengers.  To state a claim for joint venture, Plaintiffs must allege: 1) the parties' intention to create a joint venture; 2) joint control or right to control; 3) joint proprietary interest in the subject matter of the joint venture; 4) right of all venturers to share in the profits; and 5) the duty of both to share in the losses.  *Huang v. Carnival*, 909 F.Supp.2d 1356, 1362 (S.D. Fla. 2012).  Under Maritime law, however, these factors act as "signposts, likely indicia, but not

prerequisites," establishing that a plaintiff has stated a joint venture claim. *Id*. (quoting *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991).

Plaintiffs' allegations are merely barebones recitations of the joint venture elements and therefore are not enough to state a claim. *See Huang*, 909 F.Supp.2d at 1362 ("Most of the statement made in Count V of the Complaint are mere recitals of the elements of a joint venture, and are thus not entitled to the presumption of truth."). In addition, this Court has repeatedly dismissed joint venture claims under nearly identical pleadings. *See Id.* (dismissing strikingly similar joint venture claim); *Mumford,* 2014 WL 1243786 at *8 (same); *Farrell*, 2013 WL 178242, at *5-6 (same). Accordingly, Count V is dismissed without prejudice.

## VI.    Third-Party Beneficiary Claim

In Count VI, Plaintiffs allege Oceania is responsible for Dr. Bonilla's negligence based on a third-party beneficiary theory. A party making a third-party beneficiary claim must allege: 1) the existence of a contract in which the claimant is not a party; 2) an intent by the contracting parties that the contract primarily and directly benefits the plaintiff; 3) a breach of that contract by one party; and 4) damages resulting from the breach. *See Rinker*, 753 F.Supp.2d at 1243-44. Plaintiffs assert that they were third party beneficiaries of an agreement between Oceania and Bonilla and that Bonilla breached the agreement by providing substandard medical care.

Plaintiffs fail to state a third-party beneficiary claim against **OCEANIA**. Plaintiffs assert Dr. Bonilla breached the agreement. However, to state a third party beneficiary claim against Oceania, Plaintiffs must be able to allege that Oceania breached the alleged agreement. *See Id.* at 1244 ("To hold Carnival liable for a breach by the other contracting parties, as Plaintiff seeks to do, would turn contract law on its head."); *Huang,* 909 F.Supp.2d at 1362 (holding that plaintiff failed to state a third party beneficiary claim against a ship operator where plaintiff claimed medical staff, and not

ship operator, breached the alleged agreement). Plaintiffs make no such allegation. Accordingly, Count VI is dismissed without prejudice.

## VII.  Loss of Consortium

General maritime law does not allow recovery for loss of consortium. *See Doyle v. Graske*, 579 F.3d 898, 905 (2009)(holding general maritime law does not allow recovery of loss-of-consortium damages by the spouses of non-seafarers); *Gandhi v. Carnival Corp*., No. 13-24509-CIV, 2014 WL 1028940 (S.D. Fla. Mar. 14, 2014). Accordingly, Count VIII is dismissed with prejudice.

## VIII.  Punitive Damages

Under the common law, recovery of punitive damages is limited to cases in which a defendant's conduct is "outrageous, owing to gross negligence, willful, wanton and reckless indifference for the rights of others, or behavior even more deplorable." *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008). "[P]unitive damages have long been available at common law... [and] the common-law tradition of punitive damages extends to maritime claims." *Atl. Sounding Co., Inc. v. Townsend,* 557 U.S. 404, 411, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009). *Townsend* established that punitive damages are available under federal maritime law "for wanton, willful, or outrageous conduct." *Id.* at 409. *See also Lobegeiger v. Celebrity Cruises, Inc.,* 2011 WL 3703329 at *7 (S.D.Fla. Aug.23, 2011) ("A plaintiff may recover punitive damages under general maritime law ... where the plaintiff's injury was due to the defendant's 'wanton, willful, or outrageous conduct.'"). A request for punitive damages must be stricken from the complaint if the allegations therein do not present a factual basis supporting the recovery of punitive damages, in other words, factual allegations showing wanton, willful or outrageous conduct. *See Baker v. Carnival*, 2006 WL 3519093 (S.D.Fla. Dec. 5, 2006).

Plaintiffs' allegations against Oceania do not meet this standard.  Indeed, Plaintiffs have not alleged any breach of any duty by Oceania, much less that Oceania acted in a wanton, willful or even reckless manner.  Accordingly, the Court strikes Plaintiffs' request for punitive damages.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss is GRANTED.  All Counts against Oceania are DISMISSED.  It is further

**ORDERED AND ADJUDGED** that Plaintiffs' request for punitive damages is stricken.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 31st day of October, 2014.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:   Magistrate Judge Turnoff
      All Counsel of Record