UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-21340

DIANE URE, and THOMAS URE, JR.,

     Plaintiffs,

v.

OCEANIA CRUISES, INC., and
FABIAN BONILLA, M.D.

     Defendants.

                                               /

## <u>SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiffs sue Defendants and allege:

## PRELIMINARY ALLEGATIONS

1. Plaintiffs, DIANE URE and THOMAS URE, JR. ("Plaintiffs"), are citizens of California.

2. Defendant, OCEANIA CRUISES, INC. ("OCEANIA"), is a corporation incorporated under the laws of Panama, having its principal place of business in Miami, Florida.

3. Defendant, FABIAN BONILLA, M.D. ("BONILLA"), is the ship's doctor aboard the cruise ship M/V MARINA who saw, examined, treated and/or was consulted concerning the medical condition of DIANE URE while aboard the M/V MARINA. Upon information and belief, BONILLA is not a citizen of California.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

5. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the admiralty and maritime jurisdiction of this Court.

6.  Defendants, OCEANIA and Fabian Bonilla, M.D., at all times material hereto, personally or through an agent:

    a.  Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b.  Was engaged in substantial activity within this state;

    c.  Operated vessels in the waters of this state;

    d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e.  The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

    f.  Defendant OCEANIA was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, M/V MARINA.  As part of providing vacation cruises, Defendant OCEANIA advertised that a competent physician and ship's hospital would be available in the event passengers needed medical care.

7.  Defendants are subject to the jurisdiction of the Courts of this state.

8.  At all material times, Defendant Bonilla engaged in substantial and not isolated activities in Florida. Such activities and contacts, assessed over a period of time and considered collectively, establish jurisdiction under Florida's long arm statute.

    a.  Defendant Bonilla agreed to insure an entity located in Florida (Oceania), for foreseeable risks. Upon information and belief, Bonilla entered into agreements with Florida based Oceania to indemnify it and insure it. Florida Statute §48.193(1)(d) provides that "any person … who contracts to insure any person,

property, *or* risk located in Florida" is subject to the jurisdiction of Courts in Florida. Because Defendant Bonilla contractually agreed to indemnify Oceania (an entity located in Florida) for any harm resulting from his services – including medical malpractice; under 48.193(1)(d), Defendant Bonilla agreed to insure a person in Florida.

b.  At all relevant times, Defendant Bonilla worked as a ship's physician on board Oceania vessels (and other cruise line vessels), while the vessels were in Florida ports. During each of these times, while the vessel was in a Florida port or in Florida territorial waters, Defendant Bonilla was expected to provide medical care - and, in fact, provided medical care to passengers in Florida. As such, harm resulting from Dr. Bonilla's services performed in Florida - was a foreseeable risk in Florida, for which Dr. Bonilla insured Oceania in Florida. On this ground alone, this Court has personal jurisdiction over Defendant Bonilla under the long arm statute's insurance provision, 48.193(1)(d). Alternatively, Defendant Bonilla's continuing agreements to insure Florida based Oceania should be considered collectively with all of Defendant Bonilla's other contacts (described below), to establish jurisdiction under Florida's general jurisdiction statute, §48.193(2).

c.  Defendant Bonilla appointed Oceania as his exclusive agent in Florida, giving Oceania "absolute and complete control" of all claims brought against him in Florida. In consideration of working as a ship's doctor for Florida-based Oceania, Defendant Bonilla signed indemnity agreements with Oceania. In each of the indemnity agreements, Defendant Bonilla appointed Oceania and its insurers as his exclusive agents, giving them "absolute and complete control of the defenses of all

proceedings against [him]." By virtue of such appointments, and giving Oceania a quasi-power of attorney – Defendant Bonilla purposefully directed his activities to this forum. In this case, under the aforementioned agreement, Florida-based Oceania controls and pays for Bonilla's Florida attorneys. Accordingly, Bonilla has appointed an agent in Florida, other than his attorney, to assume complete control of his defenses in this case.

d.   At the time of the incident - and presently – Bonilla maintains active bank accounts in Florida. Upon information and belief, Bonilla earned taxable income from these accounts.

e.   At all relevant times, Dr. Bonilla provided medical care to patients in Florida, while working and being compensated as a cruise ship doctor. Dr. Bonilla provided medical care to passengers in Florida ports (and Florida territorial waters).

f.   At all relevant times, Dr. Bonilla voluntarily received medical training and continuing medical instruction in Florida.

g.   At all relevant times, Dr. Bonilla purposefully reached out to Oceania (and other cruise lines) in Florida and entered into long term business arrangements with these Florida entities, including the formation of a joint ventures for profit, to provide medical services to cruise passengers.

h.   All payments of Defendant Bonilla's earnings, from his joint ventures with Florida-based Oceania (and other Florida-based cruise lines) were processed by Oceania in Florida.

i.   The facts giving rise to the causes of action in this incident took place, in part, in Florida. At all relevant times, Defendant Dr. Bonilla (acting in consultation and in

concert with Oceania officials' located Florida) failed to evacuate the Plaintiff to a properly equipped medical facility in Barbados. Accordingly, this Court also has specific jurisdiction over Defendant Dr. Bonilla.

9. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

10. At all times material hereto, Defendant OCEANIA owned, operated, managed, maintained and/or controlled the vessel, M/V MARINA.

11. At all times material hereto, Defendant OCEANIA owned, operated, managed, maintained and/or controlled the medical equipment in the ship's medical facility aboard the vessel, M/V MARINA.

12. On or about May 6, 2013 through May 19, 2013, Plaintiffs were paying passengers on Defendant's vessel M/V MARINA which was in navigable waters, for a cruise which began on May 6, 2013 and was scheduled to end on May 26, 2013.

13. At all times material hereto, OCEANIA was a member of the Cruise Lines International Association ("CLIA").

14. At all times material hereto, OCEANIA was required to have on board, a full-time, emergency medical professional, pursuant to the Cruise Industry Passenger Bill of Rights. Article 3 of the International Cruise Line Passenger Bill of Rights provides as follows: "The right to have available on board ships operating beyond rivers or coastal waters full-time, professional emergency medical attention, as needed until shore side medical care becomes available."

15. The requirement to carry full-time emergency medical professionals onboard OCEANIA vessels, constitutes a formal adoption of cruise industry practices. In the words of

CLIA's president and CEO:

The Cruise Industry Bill of Rights codifies many longstanding practices of CLIA members and goes beyond to further inform cruise guests of the industry's commitment to their comfort and care." Thus, "[b]y **formally adopting industry practices into a 'Passenger Bill of Rights**,' CLIA is further demonstrating consistent practices across CLIA member lines. **The cruise industry is committed to continue to deliver against the high standards we set for ourselves in all areas of shipboard operations.**"

16.     The International Cruise Line Passenger Bill of Rights is a requirement imposed on all CLIA members. Adoption is a condition of membership. For that reason, *every single cruise line* (including Oceania) adopted it.  Second, the Bill of Rights was submitted by CLIA to the International Maritime Organization (IMO), pursuant to the IMO's legal and regulatory authority over international maritime industry:"

Washington D.C. – May 22, 2013

The Cruise Lines International Association (CLIA) today announced that its Board of Directors approved the adoption of the of a "Cruise Industry Passenger Bill of Rights" detailing CLIA members commitment to the safety, comfort and care of guests in a number of important areas.

The CEOs of CLIA North American member cruise lines are each verifying in writing that they have adopted the Passenger Bill of Rights, which is a condition of membership in the Association. CLIA also will submit the Passenger Bill of Rights to the International Maritime Association (IMO)[1] requesting formal recognition and applicability under the IMO's authority over the international maritime industry. The Passenger Bill of Rights will be effective immediately for U.S. passenger who purchase their cruises in North America on CLIA's North American cruise lines regardless of itinerary.

17.     OCEANIA owns and operates onboard medical centers, which are staffed by doctors and nurses whom the cruise line has hired, trained and controlled. The medical facilities were created by OCEANIA, and are owned and operated by OCEANIA. OCEANIA finances

---

[1] The IMO is a specialized agency of the United Nations with 170 Member States. As a specialized agency of the United Nations, IMO is the global standard-setting authority for the safety, security and environmental performance of international shipping. Its main role is to create a regulatory framework for the shipping industry that is fair and effective, universally adopted and universally implemented.

and equips the ships' medical facilities, it pays to stock them with all supplies, various medicines, and equipment. OCEANIA also assists in running the medical facilities and has control over their day-to-day workings and operations.

18.    OCEANIA also cooperates with the American College of Emergency Physicians to develop and adopt industry-wide guidelines addressing unique needs and limitations of shipboard medical infirmaries.

19.    At all times material hereto, OCEANIA employed and/or contracted with BONILLA to serve as the full-time emergency professional, required by the Cruise Industry Passenger Bill of Rights on board the M/V MARINA. At all relevant times, BONILLA was an agent and/or servant and/or employee of OCEANIA, and BONILLA acted within the scope of his employment and/or agency. In particular:

   a.   OCEANIA directly paid BONILLA a salary for his work on the ship's medical center;

   b.   BONILLA was represented to the Plaintiffs, the ships' passengers, and immigration authorities as an employee and/or agent and/or servant and/or crewmember of OCEANIA;

   c.   BONILLA wore a ship's uniform furnished by OCEANIA. This uniform bears OCEANIA's name and logo;

   d.   BONILLA ate with the ship's crew (officers);

   e.   BONILLA was under the commands of the ship's officers;

   f.   The literature provided by OCEANIA showed BONILLA as a crew member (officer) and employee of OCEANIA;

   g.   BONILLA worked in the ship's medical center;

h.  BONILLA worked aboard the M/V MARINA;

i.  BONILLA spoke to the Plaintiffs as though he had authority to do so by OCEANIA;

j.  OCEANIA's marketing materials describe the ships' medical facilities in proprietary language;

k.  OCEANIA bills passengers directly for all medical services provided by OCEANIA doctors on OCEANIA medical facilities.

20.  As a result of the requirement for OCEANIA to have on board, a full-time, emergency medical professional, OCEANIA did not carry BONILLA on board the M/V MARINA for the convenience of its passengers; rather, OCEANIA employed and/or contracted with and/or provided BONILLA on board the M/V MARINA in connection with its operation of the M/V MARINA as part of OCEANIA's business of operating cruise ships.

21.  All in all, OCEANIA is in the business of providing medical care. Like other amenities offered onboard its ships (i.e. bars, restaurants, spas); Oceania also offers to passengers modern medical facilities onboard its ships for profit.  This was recently recognized by the Eleventh Circuit Court of Appeals in the case of *Franza v. Royal Caribbean Cruises, Ltd.,* 13-13067 (11th Cir. Nov. 10, 2014), p. 38-39, n. 14 (emphasis added):

What's more, we suspect that Franza's allegations only scratch the surface. We have no difficulty imagining other cases in which additional evidence could demonstrate a cruise line's medical expertise – particularly since, in the public domain, cruise lines routinely claim to possess such knowledge. See, e.g., Peltz, Has Time Passed Barbetta by?, at 19 (**quoting statement by Director of Princess Cruise Lines Medical Department claiming that "major cruise lines have designed modern medical facilities comprising several ICU's, computerized radiology, and sophisticated laboratories" and "have achieved accreditation to international health care standards and ISO 9001 certification**") … Press Release Princess Cruises, Princess Cruises' Medical Departments Earn Unique

Distinction with Prestigious Quality Certification and Accreditation (May 6, 2010).

22.    The Plaintiff, DIANE URE, boarded Defendant Oceania's cruise ship on May 6, 2013. Starting on May 12, 2013, she began suffering from a gastrointestinal illness.

23.    Starting on or about May 12, 2013, DIANE URE presented to the medical facility aboard the M/V MARINA for evaluation, diagnosis, and treatment.

24.    DIANE URE was seen and/or evaluated and/or diagnosed and/or treated by the ship's medical doctor, BONILLA, repeatedly between May 12, 2013 through May 19, 2013 aboard the M/V MARINA.

25.    At all times material, DIANE URE's medical condition was mismanaged by Defendants and/or Defendants failed to adequately monitor DIANE URE's metabolic levels and/or Defendants failed to provide adequate medical treatment to DIANE URE so that her medical condition significantly deteriorated between May 12, 2013 and May 19, 2013. In particular, Oceania's shipboard physician, BONILLA: 1) did not adequately monitor the Plaintiff's electrolytes, 2) did not perform a diabetic screen, 3) did not prescribe diarrhea potassium supplementation and oral fluid intake, and 4) did not instruct the patient as to foods she could eat or not eat.   As a result of OCEANIA's shipboard physician's mismanagement of the Plaintiff's care, she developed hypernatremia; a depletion of her electrolytes, sodium and plasma levels.

26.    As a result of the Defendants' mismanagement of DIANE URE's medical condition between May 12, 2013 and May 19, 2013, DIANE URE was in need of emergency medical treatment on and/or before May 19, 2013.

27.    At the time, while vessel's itinerary was en route to Barbados, OCEANIA represented to the Plaintiffs, that there was a "very good" hospital in Barbados. OCEANIA further

represented that the place, Bay View Hospital, was "adept in treating medical emergencies."

28. At all times material, the Plaintiffs relied on Defendants expertise regarding the quality and adequacy of medical care in the Caribbean; and, more specifically, the Plaintiffs relied on Defendants' referral of DIANE URE to Bay View Hospital in St. Michael, Barbados, for emergency medical treatment.

29. On or about May 19, 2013, OCEANIA referred DIANE URE to Bay View Hospital in St. Michael, Barbados, for emergency medical treatment. Unbeknownst to the Plaintiffs, Oceania *knowingly* recommended and sent the Plaintiff to a substandard medical facility. According to the Embassy of the United States in Barbados, "[t]here are NO emergency services at this facility." In fact, as the U.S. embassy reports, "there are no resident doctors, but the facility employs approximately 35 nurses." Indeed, the hospital is designed to only deal with "less acute illnesses, minor outpatient surgery, and obstetric and gynecological care."

30. Notably, according to the U.S. Embassy in Barbados, Queen Elizabeth Hospital (a facility located closer to the vessel's port of call) is Barbados' major trauma facility. It has a 24-hour emergency room, medical intensive care, surgical intensive care, and dialysis units. More importantly, it has on its staff, physicians and surgeon consultants from almost all specialties. This is in striking contrast to Oceania's Bay View Hospital, which provides no emergency services, does not have any resident doctors, and is only equipped to treat less acute illnesses.

31. Most troubling is Oceania's shameful motive for recommending and referring the Plaintiff to a substandard medical facility (which provides no emergency services); upon

information and belief, Oceania had a contract and/or agreement with Bay View Hospital in St. Michel, Barbados whereby (for a fee) Oceania referred ill passengers for emergency medical care at Bay View Hospital. These facts suggest that OCEANIA wilfully disregarded the Plaintiff's best interests and referred her for medical treatment to a substandard facility in order to make money. Accordingly, punitive damages are warranted.

32.     DIANE URE was admitted to Bay View Hospital on May 19, 2013 and received medical treatment at Bay View Hospital from May 19, 2013 through May 21, 2013.

33.     At all times material, DIANE URE's medical condition was mismanaged at Bay View Hospital.

34.     As noted earlier, Bay View Hospital was unequipped and unable to effectively and/or adequately provide emergency medical treatment to DIANE URE. At all times material, the facility was unequipped to deal with the Plaintiff's hypernatremia; it had no trauma center, no emergency medical services, and no resident doctors.

35.     In an attempt to treat her hypernatremia (low sodium levels), the inexperienced and unqualified staff at Bay View Hospital infused her with an excessive combination of saline solution and sodium tablets, in too short of a time. This raised the Plaintiff's sodium levels too quickly, causing her to fall into a coma and develop Osmotic Demyelination Syndrome. ODS ultimately destroyed the layer that insulates the Plaintiff's nerve cells, leading to permanent and irreversible brain damage.

36.     At all relevant times, the Plaintiffs relied upon Defendants' expertise, referral to, and recommendation of, Bay View Hospital to the detriment of the Plaintiffs.

37.     At all times material, Defendants' actions and failures which resulted in DIANE URE

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

receiving inadequate medical treatment aboard the M/V MARINA and which resulted in DIANE URE being referred to Bay View Hospital were intentional and/or with reckless indifference on the part of OCEANIA and/or BONILLA. Such conduct, which led the Plaintiff to suffer permanent and irreversible brain damage, warrants the imposition of punitive damages.

## COUNT I – NEGLIGENCE AGAINST OCEANIA FOR THE ACTS OF BONILLA BASED ON THE THEORY OF RESPONDEAT SUPERIOR

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

38.     At all times material hereto, BONILLA, was an agent and/or servant and/or employee of OCEANIA.

39.     At all times material hereto, BONILLA was acting within the scope of his employment and/or agency.

40.     OCEANIA is estopped to deny that BONILLA was its agent and/or employee and/or servant.

41.     At all times material hereto, BONILLA, owed a duty to provide DIANE URE with reasonable care under the circumstances. BONILLA breached his duty to provide reasonable care under the circumstances by:

    a.   Failing to promptly provide DIANE URE with proper and/or adequate medical care and attention; and/or

    b.   Failing to timely diagnose DIANE URE's medical condition; and/or

    c.   Failing to adequately monitor DIANE URE's medical condition; and/or

    d.   Failing to adequately treat DIANE URE's medical condition; and/or

    e.   Failing to adequately record DIANE URE's medications; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

f.  Failing to adequately advise DIANE URE regarding her medical condition; and/or

g.  Failing to recommend appropriate medical care; and/or

h.  Knowingly rendering treatment to DIANE URE while lacking the proper licenses to practice medicine in the jurisdiction of the ship; and/or

i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship; and/or

j.  Failing to stabilize DIANE URE's medical condition; and/or

k.  Allowing DIANE URE's medical condition to significantly deteriorate; and/or

l.  Allowing DIANE URE's medical condition to deteriorate to the point where she required emergency medical treatment; and/or

m.  Failing to recommend an adequate a proper and adequate medical facility to treat DIANE URE's emergency medical condition; and/or

n.  Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of DIANE URE; and/or

o.  Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of DIANE URE.

42. OCEANIA had a duty to provide DIANE URE with reasonable care under the circumstances and through the acts of its agents and/or employees and/or servant, BONILLA, breached its duty to provide DIANE URE with reasonable care under the circumstances.

43. As a result of the negligence of BONILLA, for which OCEANIA is vicariously liable, DIANE URE was injured about her body and extremities, suffered physical pain and

suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

### COUNT II – NEGLIGENCE AGAINST OCEANIA FOR NEGLIGENT HIRING AND/OR NEGLIGENT RETENTION OF BONILLA

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

44.     At all times material hereto, BONILLA, was an agent and/or servant and/or employee of OCEANIA.

45.     At all times material hereto, OCEANIA owed its sick and injured passengers, including the Plaintiff, a duty to exercise reasonable care to furnish such aid an assistance as ordinary prudent persons would render under similar circumstances.

46.     As part of its duty to exercise reasonable care to furnish aid and assistance to sick and injured passengers, OCEANIA had a duty to hire a properly qualified and competent

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

ship's doctor.

47.   At all material times, OCEANIA was on notice of the harmful propensities of BONILLA. In particular, OCEANIA failed to properly ascertain during BONILLA's hiring and retention process that it had not hired a properly qualified and competent physician.

48.   At all times material, OCEANIA breached its duty to exercise reasonable care to by failing to hire a properly qualified and competent ship's doctor. At all times material, OCEANIA knew or should have known about Dr. Bonilla's unfitness as a shipboard doctor. Plaintiff anticipates that discovery will reveal that OCEANIA knew or should have known that:

   a. In prior occasions, while treating patients on board OCEANIA vessels, BONILLA failed to provide proper, prompt and adequate treatment; and/or

   b. BONILLA was not qualified to properly monitor patients' metabolic levels (and, in the past, had improperly monitor patients' metabolic levels onboard OCEANIA vessels). In this case, BONILLA's failure to adequately monitor the Plaintiff's metabolic levels, significantly deteriorated the Plaintiff's medical condition between May 12, 2013 and May 19, 2013, leading to her hyperthermia and later irreversible brain damage; and/or

   c. From the time he was hired, up the time he treated the Plaintiff, BONILLA did not have any proper training in emergency medicine; and/or

   d. BONILLA does not have a valid medical license; and/or

   e. Prior to his work with OCEANIA, BONILLA had failed to provide proper, prompt and adequate medical treatment to patients; and/or

   f. Prior to his work with OCEANIA, BONILLA mismanaged the medical

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

treatments of patients he treated; and/or

g. During his work with OCEANIA, BONILLA mismanaged the medical treatments of patients he treated; and/or

h. During the hiring process, OCEANIA did not properly test and/or evaluate BONILLA's medical proficiency. In particular, OCEANIA did not properly test and/or evaluate whether BONILLA was qualified and experienced in properly monitoring patients' metabolic levels, to reduce risk of hypernatremia (low sodium levels), and ultimately permanent brain damage.

49. At all material times, Defendant OCEANIA had exclusive custody and control of the vessel M/V MARINA.

50. Defendant OCEANIA knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant OCEANIA, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

51. As a result of the negligence of Defendant OCEANIA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the

losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

## COUNT III – GENERAL NEGLIGENCE AGAINST OCEANIA

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

52. At all times material hereto, OCEANIA had a duty to exercise reasonable care for the safety of its passengers, including Plaintiffs.

53. At all times material, Defendant OCEANIA and/or its agents, servants, and/or employees breached its duty/duties to DIANE URE, as follows:

   a. Referring DIANE URE to Bay View Hospital; and/or

   b. Failing to adequately investigate Bay View Hospital; and/or

   c. Failing to warn Plaintiffs of the dangers and/or hazards of obtaining emergency medical care at Bay View Hospital; and/or

   d. Failing to inform Plaintiffs of medical options available to them in the Bahamas; and/or

   e. Contracting and/or entering into agreements with Bay View Hospital for referral of passengers for medical care; and/or

   f. Failing to contract and/or enter into agreements with qualified emergency treatment facilities and hospitals in the Bahamas; and/or

   g. Failing to disclose and/or inform the Plaintiffs of any and all agreements between

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

OCEANIA and Bay View Hospital; and/or

h.  Failing to assist the Plaintiffs in emergent travel to the United States for medical care; and/or

i.  Failing to adequately evacuate the Plaintiffs from the M/V MARINA in a timely manner; and/or

j.  Failing to initiate and/or use tele-medicine and/or video-medicine sources aboard the M/V MARINA; and/or

k.  Failing to promulgate and/or enforce adequate policies and procedures to ensure that DIANE URE received prompt, proper, and adequate medical treatment; and/or

l.  Failing to comply with the Cruise Industry Passenger Bill of Rights; and/or

m.  Failing to provide adequate medical equipment aboard the M/V MARINA; and/or

n.  Failing to promulgate and/or enforce adequate medical procedures aboard the M/V MARINA; and/or

o.  Failing to warn of dangers and/or hazards in the Bahamas, related to medical care, that OCEANIA knew or should have known about; and/or

p.  Failing to adequately assist the Plaintiffs with obtaining adequate medical care; and/or

q.  Actively directing the Plaintiffs to inadequate medical care; All of which caused and/or contributed to further causing severe and permanent injury to DIANE URE when DIANE URE was referred to Bay View Hospital in the Bahamas for emergency medical care and received sub-standard medical treatment.

54.  At all material times, Defendant OCEANIA had exclusive custody and control of the

vessel M/V MARINA.

55.     Defendant OCEANIA knew of the foregoing conditions causing the subject accident and did not correct them, or the conditions existed for a sufficient length of time so that Defendant OCEANIA, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

56.     As a result of the negligence of Defendant OCEANIA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

   **WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

**COUNT IV – APPARENT AGENCY AGAINST OCEANIA FOR ACTS OF BONILLA**

   Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

57.     At all material times, BONILLA saw, examined, treated and/or was consulted concerning

the medical condition of DIANE URE while aboard the M/V MARINA.

58. At all times material hereto, BONILLA was represented to the Plaintiffs and the ships' passengers as an employee and/or agent and/or servant of OCEANIA, in that:

   a. BONILLA wore a ship's uniform;

   b. BONILLA ate with the ship's crew (officers);

   c. BONILLA was under the commands of the ship's officers;

   d. The literature provided by OCEANIA showed BONILLA as a crew member (officer) and employee of OCEANIA;

   e. BONILLA worked in the ship's medical center;

   f. BONILLA was paid a salary by OCEANIA;

   g. BONILLA worked aboard the M/V MARINA;

   h. BONILLA spoke to the Plaintiffs as though he had authority to do so by OCEANIA;

59. At no time did BONILLA represent to the Plaintiffs in particular or the ship's passengers in general, in any way that he was not an agent or employee of OCEANIA.

60. At all material times, Plaintiffs reasonably relied on the representations to their detriment that BONILLA was an employee and/or agent and/or servant of OCEANIA. Indeed, at all relevant times, had the Plaintiffs known BONILLA was not properly qualified to treat the Plaintiff's condition (including monitoring his metabolic levels to prevent hyperthermia); the Plaintiffs would have changed course. Upon information and belief, the Plaintiffs would have demanded that the Plaintiff be immediately air evacuated to the nearest adequate medical facility. Additionally, had the Plaintiffs known OCEANIA would later attempt to absolve itself from responsibility by claiming BONILLA was not its

"employee" (despite making representations to the contrary); the Plaintiffs would have changed course, demanding to be immediately air evacuated to the nearest medical facility.

61. It was reasonable to believe that BONILLA was OCEANIA's agent because he wore a ship's uniform and admitted DIANE URE to the ship's medical facility. In addition, at all times material, BONILLA spoke and acted as though he was authorized to do so by OCEANIA.

62. This reasonable reliance was detrimental because it significantly worsened DIANE URE's medical condition.

63. Defendant OCEANIA is estopped to deny that BONILLA was its apparent agent and/or apparent employee and/or apparent servant.

64. At all times material, OCEANIA had a duty to provide the Plaintiffs with reasonable care under the circumstances and through the acts of its apparent agent.

65. At all times material, OCEANIA through its apparent agent, BONILLA breached its duty to provide DIANE URE with reasonable care under the circumstances.

66. DIANE URE was injured due to the fault and/or negligence of OCEANIA through the acts of its apparent agent, BONILLA, as follows:

    a. Failing to promptly provide DIANE URE with proper and/or adequate medical care and attention; and/or

    b. Failing to timely diagnose DIANE URE's medical condition; and/or

    c. Failing to adequately monitor DIANE URE's medical condition; and/or

    d. Failing to adequately treat DIANE URE's medical condition; and/or

    e. Failing to adequately record DIANE URE's medications; and/or

f.  Failing to adequately advise DIANE URE regarding her medical condition; and/or

g.  Failing to recommend appropriate medical care; and/or

h.  Knowingly rendering treatment to DIANE URE while lacking the proper licenses to practice medicine in the jurisdiction of the ship and/or Majuro, Marshall Islands; and/or

i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship; and/or

j.  Failing to stabilize DIANE URE's medical condition; and/or

k.  Allowing DIANE URE's medical condition to significantly deteriorate; and/or

l.  Allowing DIANE URE's medical condition to deteriorate to the point where she required emergency medical treatment; and/or

m.  Failing to recommend an adequate a proper and adequate medical facility to treat DIANE URE's emergency medical condition; and/or

n.  Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of DIANE URE; and/or

o.  Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of DIANE URE.

67.  As a result of the negligence of Defendant OCEANIA through its apparent agent BONILLA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing

conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

## COUNT V – JOINT VENTURE BETWEEN OCEANIA AND BONILLA

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

68. At all material times, BONILLA saw, examined, treated and/or was consulted concerning the medical condition of DIANE URE while aboard the M/V MARINA.

69. A Joint Venture is an association of persons or legal entities to carry out a single business enterprise for profit. At all material times, OCEANIA and BONILLA engaged in a Joint Venture to operate a ship's medical facility for passengers onboard the M/V MARINA, for a profit.

70. As its part of the Joint Venture, OCEANIA financed and equipped the ship's medical facility and assisted in running it. As its part of the Joint Venture, BONILLA provided labor and/or assisted in running the ship's medical facility so as to generate charges to

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

passengers which were thereby collected by OCEANIA and the money was then shared by OCEANIA and BONILLA.

71.     Both OCEANIA and BONILLA had joint or shared control over aspects of the Joint Venture. BONILLA had control over the day to day workings of the ship's medical facility. OCEANIA also had control over the day to day workings of the ship's medical facility and had control over the billings and collections for the ship's medical facility. Thus, OCEANIA and BONILLA had joint control over the day to day operations of the medical facility in that BONILLA performed the medical aspects of the Joint Venture and OCEANIA performed the operational aspects of the Joint Venture.

72.     OCEANIA and BONILLA shared a common purpose: to operate the ship's medical facility for profit.

73.     OCEANIA and BONILLA had a joint proprietary or ownership interest in the ship's medical facility. OCEANIA had the interest in the money it devoted to setting up the medical facility and BONILLA had a proprietary interest in the time and labor expended in operating the ship's medical facility. Further, OCEANIA and BONILLA shared in the profits of the Joint Venture. Upon information and belief, there exists contractual arrangements with OCEANIA and BONILLA which expressly lay out such a profit sharing relationship. In Florida, a duty to share losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the other the necessary capital.

74.     OCEANIA and BONILLA therefore:

   a.  Had a community of interest in the performance of the common purpose, i.e., the operation of a ship's medical facility for passengers for profit;

b. Had a joint proprietary interest;

c. Had a joint control or right of control with respect to the operation of the medical facility;

d. Had a right to share in the profits of the joint venture;

e. Would share losses which may have been sustained.

75. As Joint Venturers, OCEANIA and BONILLA are liable for each other's negligence. As a result, OCEANIA is liable for the negligent conduct of BONILLA and damages previously described in this complaint. Participants in a Joint Venture are each liable for the torts of the other or of the servants of the joint undertaking committed within the course and scope of the undertaking, without regard to which of the joint venturers actually employed the servant.

76. At all times material while on the ship, OCEANIA and/or BONILLA, through the joint venture, breached their duty to provide DIANE URE with reasonable care under the circumstances.

77. DIANE URE was injured due to the fault and/or negligence of OCEANIA through the acts of its joint venturer, BONILLA, as follows:

a. Failing to promptly provide DIANE URE with proper and/or adequate medical care and attention; and/or

b. Failing to timely diagnose DIANE URE's medical condition; and/or

c. Failing to adequately monitor DIANE URE's medical condition; and/or

d. Failing to adequately treat DIANE URE's medical condition; and/or

e. Failing to adequately record DIANE URE's medications; and/or

f. Failing to adequately advise DIANE URE regarding her medical condition; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

g.  Failing to recommend appropriate medical care; and/or

h.  Knowingly rendering treatment to DIANE URE while lacking the proper licenses to practice medicine in the jurisdiction of the ship; and/or

i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship or Majuro, Marshall Islands; and/or

j.  Failing to stabilize DIANE URE's medical condition; and/or

k.  Allowing DIANE URE's medical condition to significantly deteriorate; and/or

l.  Allowing DIANE URE's medical condition to deteriorate to the point where she required emergency medical treatment; and/or

m.  Failing to recommend an adequate a proper and adequate medical facility to treat DIANE URE's emergency medical condition; and/or

n.  Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of DIANE URE; and/or

o.  Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of DIANE URE.

78.  As a result of the negligence of OCEANIA through its joint venturer, BONILLA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered

physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

## COUNT VI – THIRD PARTY BENEFICIARY CLAIM AGAINST OCEANIA

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

79.     At all material times, BONILLA saw, examined, treated and/or was consulted concerning the medical condition of DIANE URE while aboard the M/V MARINA.

80.     Upon information and belief, at all times material hereto, BONILLA had an agreement in effect with OCEANIA in which OCEANIA agreed to provide indemnity insurance coverage for the claims made in this action;

81.     Further, upon information and belief, OCEANIA had a separate agreement with BONILLA. The agreement consisted in OCEANIA financing and equipping the ship's medical facility, and BONILLA running the facility, for the primary and direct purpose of providing medical services to passengers.  At all material times, OCEANIA represented to passengers that the intent of the agreement was: 1) to provide medical emergency medical care to guests, and 2) to maintain a safe and comfortable environment for their guests.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

82.    At all times material, OCEANIA voluntarily undertook a duty contained within the Cruise Line Passenger Bill of Rights to have available on board its ship full time professional emergency medical attention as needed, until shore side medical care becomes available. Princess advertised this to its passengers, including Plaintiff and Plaintiff reasonably relied upon it to his detriment.

83.    At all times material hereto, the agreements were entered into, to primarily and directly benefit passengers, such as the Plaintiffs.

84.    At all times material, OCEANIA made representations to passengers, including:

   a.  should a guest require medical attention while aboard their vessels, professional emergency medical attention aboard the ship (BONILLA), would be available to assist at all times; and/or

   b.  that physicians are available to render services to passengers at a customary fee; and/or

   c.  that OCEANIA's medical centers met or exceeded the standards established by the Cruise Lines International Association and/or College of Emergency Physicians; and/or

   d.  that OCEANIA's medical centers were staffed by qualified physicians who are internationally accredited and are committed to providing the highest quality of shipboard medical care.

85.     DIANE URE, while under the care and treatment of BONILLA in OCEANIA's medical facility, was treated and/or monitored inappropriately, improperly and negligently.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

86.  Therefore, because 1) BONILLA was not qualified and competent to treat DIANE URE and 2) could not provide the highest quality of shipboard medical care to DIANE URE; BONILLA breached his contract with OCEANIA.

87.  Moreover, OCEANIA also breached the aforementioned agreements entered into, to primarily and directly benefit passengers, such as the Plaintiffs. In particular, OCEANIA failed to hire a properly qualified and competent ship's doctor. At all times material, OCEANIA knew or should have known about Dr. Bonilla's unfitness as a shipboard doctor. Plaintiff anticipates that discovery will reveal that:

   a. In prior occasions, while treating patients on board OCEANIA vessels, BONILLA failed to provide proper, prompt and adequate treatment; and/or

   b. BONILLA was not qualified to properly monitor patients' metabolic levels (and, in the past, had improperly monitor patients' metabolic levels onboard OCEANIA vessels). In this case, BONILLA's failure to adequately monitor the Plaintiff's metabolic levels, significantly deteriorated the Plaintiff's medical condition between May 12, 2013 and May 19, 2013, causing her hypernatremia and ultimately irreversible brain damage; and/or

   c. From the time he was hired, up the time he treated the Plaintiff, BONILLA did not have any proper training in emergency medicine; and/or

   d. BONILLA does not have a valid medical license; and/or

   e. Prior to his work with OCEANIA, BONILLA had failed to provide proper, prompt and adequate medical treatment to patients; and/or

   f. Prior to his work with OCEANIA, BONILLA mismanaged the medical treatments of patients he treated; and/or

g.  During his work with OCEANIA, BONILLA mismanaged the medical treatments of patients he treated; and/or

h.  During the hiring process, OCEANIA did not properly test and/or evaluate BONILLA's medical proficiency. In particular, OCEANIA did not properly test and/or evaluate whether BONILLA was qualified and experienced in properly monitoring patients' metabolic levels, to reduce risk of hypernatremia (low sodium levels), and ultimately permanent brain damage. In this case, DIANE URE's medical condition was mismanaged by Defendants and/or Defendants failed to adequately monitor DIANE URE's metabolic levels and/or Defendants failed to provide adequate medical treatment to DIANE URE so that her medical

88.  The forgoing breach and/or breaches of the contract to which DIANE URE was a third party beneficiary was/were a direct and proximate cause of DIANE URE's injury and/or condition being aggravated and made worse.

89.  As a result of the breach of contract between BONILLA and OCEANIA, by BONILLA and OCEANIA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the

future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

## COUNT VII – NEGLIGENCE AGAINST BONILLA

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (37) as though alleged originally herein.

90. At all material times, BONILLA saw, examined, treated and/or was consulted concerning the medical condition of DIANE URE while aboard the M/V MARINA.

91. It was the duty of BONILLA to provide DIANE URE with reasonable care under the circumstances and/or medical care which did not fall below the applicable standard of care for cruise ship doctors.

92. At all times material, BONILLA breached his duty to provide DIANE URE with reasonable care under the circumstances.

93. DIANE URE was injured due to the fault and/or negligence of BONILLA, as follows:

    a. Failing to promptly provide DIANE URE with proper and/or adequate medical care and attention; and/or

    b. Failing to timely diagnose DIANE URE's medical condition; and/or

    c. Failing to adequately monitor DIANE URE's medical condition; and/or

    d. Failing to adequately treat DIANE URE's medical condition; and/or

    e. Failing to adequately record DIANE URE's medications; and/or

    f. Failing to adequately advise DIANE URE regarding her medical condition; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

g.  Failing to recommend appropriate medical care; and/or

h.  Knowingly rendering treatment to DIANE URE while lacking the proper licenses to practice medicine in the jurisdiction of the ship and/or Majuro, Marshall Islands; and/or

i.  Failing to have proper licenses to practice medicine in the jurisdiction of the ship or Majuro, Marshall Islands; and/or

j.  Failing to stabilize DIANE URE's medical condition; and/or

k.  Allowing DIANE URE's medical condition to significantly deteriorate; and/or

l.  Allowing DIANE URE's medical condition to deteriorate to the point where she required emergency medical treatment; and/or

m.  Failing to recommend an adequate a proper and adequate medical facility to treat DIANE URE's emergency medical condition; and/or

n.  Failing to utilize available medical testing and/or available medical equipment with an adequate frequency during the medical care and treatment of DIANE URE; and/or

o.  Failing to utilize telephone and/or video consultations with specialists during the medical care and treatment of DIANE URE.

94.  As a result of the negligence of BONILLA, DIANE URE was injured about her body and extremities, suffered physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of her injuries including life care, incurred special transportation costs after

being discharged from the vessel, suffered physical handicap, lost wages, income lost in the past, and her working ability and earning capacity have been impaired. The injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future. Further, DIANE URE lost the value of her vacation cruise for which she incurred expenses, including, but not limited to the cost of the cruise ticket for herself and others as well as transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

## COUNT VIII – LOSS OF CONSORTIUM/SOCIETY AGAINST ALL DEFENDANTS

Plaintiffs reallege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty (30) as though alleged originally herein.

95. At all times material, THOMAS URE was the lawful spouse of DIANE URE.

96. At all times material, OCEANIA and/or BONILLA breached their duty to provide DIANE URE with reasonable care under the circumstances, as contained within the foregoing allegations.

97. As a result of the negligence of the OCEANIA and/or BONILLA, DIANE URE suffered severe personal injury.

98. As the lawful spouse of DIANE URE, THOMAS URE is entitled to recover damages that will reasonably compensate him for his loss of consortium and loss of society. Loss of consortium is comprised of a person's own physical, psychological, and emotional pain and anguish which results when their spouse is negligently injured to an extent that the spouse's ability to provide love, affection, companionship, comfort, or sexual relations concomitant with normal married life, is substantially impaired. Thus the concept of loss

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

of consortium includes not only the loss of support or services, it embraces such elements as loss of love, companionship, affection, society, sexual relations, solace, and more.

99.     As a direct and proximate result of OCEANIA's and/or BONILLA's negligence and other wrongful conduct, THOMAS URE has in the past and will in the future suffer loss of his wife's care, comfort, support, services, and consortium.

    **WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law, including punitive damages, against the Defendants and demand trial by jury.

    Dated this 24th day of November, 2014.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
jmargulies@lipcon.com

By: */s/Carlos Felipe Llinás Negret*
    **CARLOS FELIPE LLINÁS NEGRET**
    Fla. Bar No. 73545
    **JASON R. MARGULIES**
    Florida Bar No. 57916
