UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-21340-CIV-GAYLES/TURNOFF

DIANE URE and THOMAS URE, JR.,

    Plaintiffs,

v.

OCEANIA CRUISES, INC. and FABIAN
BONILLA, M.D.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Fabian Bonilla, M.D.'s, Limited Appearance for the Purpose of Moving to Dismiss Plaintiffs' Second Amended Complaint for Lack of Personal Jurisdiction [ECF No. 133]. The Court has reviewed the Motion and the record and is otherwise fully advised. Based thereon, the Court grants the Motion.

## BACKGROUND

### I. The Incident[1]

Plaintiffs Diane Ure ("Mrs. Ure") and Thomas Ure, Jr. ("Mr. Ure") were passengers aboard Defendant Oceania Cruises, Inc.'s ("Oceania") ship when Mrs. Ure fell ill. Defendant Fabian Bonilla, M.D. ("Dr. Bonilla"), Oceania's ship physician, treated Mrs. Ure for a gastrointestinal illness. After several days, Mrs. Ure's condition deteriorated, necessitating emergency medical treatment. Oceania recommended Bay View Hospital in Barbados and arranged for Mrs. Ure's transfer and on-shore treatment. Bay View mismanaged Mrs. Ure's treatment and/or was unable to

---

1     At this stage of the litigation, the Court accepts Plaintiffs' allegations regarding Mrs. Ure's illness and injuries as true. *See See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

adequately provide emergency care. Mrs. Ure suffered permanent injury, and later died, from her illness.[2]

On November 25, 2014, Plaintiffs filed their Second Amended Complaint against Defendants.[3] Dr. Bonilla has moved to dismiss arguing that this Court does not have personal jurisdiction over him.

## II. Dr. Bonilla's Contact with Florida[4]

Dr. Bonilla is a citizen of Ecuador. Although he works and resides onboard ships, his permanent address is in Ecuador. For the past eighteen years, Dr. Bonilla has been employed by two cruise ship companies, including Oceania, with their principal places of business in Miami, Florida. Dr. Bonilla's employment agreement with Oceania requires him to resolve all disputes relating to the agreement in Florida. Oceania interviewed, hired, and pays Dr. Bonilla and makes his ship assignments in and from its Miami offices.

Dr. Bonilla does not own or rent property in Florida. He does, however, have a bank account and corresponding credit card with Wells Fargo Bank, which he opened in Key West using a friend's address in Hialeah, Florida. He later changed the address on his Wells Fargo account to another friend's address in Key Biscayne, Florida. Dr. Bonilla has never resided at the Hialeah or Key Biscayne addresses. He has written checks bearing the Hialeah and/or Key Biscayne addresses. Dr.

---

2  Following Mrs. Ure's death, the Court stayed any determination of the merits of this action pending the medical examiner's cause of death determination. The Court did not stay its determination of Dr. Bonilla's Motion to Dismiss for lack of personal jurisdiction. [ECF No. 151].

3  There has already been extensive litigation in this action. The Court initially dismissed many of the claims against Oceania. However, following the Eleventh Circuit's ruling in *Franza v. Royal Caribbean Cruises, Inc.*, 772 F.3d 1225 (11th Cir. 2014), holding that a cruise line can be found vicariously liable for negligent medical care provided by shipboard medical personnel under principals of *respondeat superior* and apparent agency, the Court reconsidered its order of dismissal and permitted the bulk of Plaintiffs' claims against Oceania to proceed. The parties also litigated the issue of how to properly serve Dr. Bonilla.

4  Jurisdictional facts were adduced during limited jurisdictional discovery.

Bonilla signed an agreement with Wells Fargo agreeing to resolve any disputes over his account in Florida.

Dr. Bonilla attended periodic training in Florida. He has also communicated with Oceania and independent medical providers located in Florida while performing his duties aboard a ship.

## **DISCUSSION**

### I. Standard of Review

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Where a defendant challenges jurisdiction in a motion to dismiss pursuant to Rule 12(b)(2), as Dr. Bonilla does here, and submits evidence in support of his position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). When a defendant satisfies its burden, the plaintiff, in order to justify the exercise of jurisdiction, must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.*

## II. General or All-Purpose Jurisdiction

Plaintiffs argue that this Court has general jurisdiction over Dr. Bonilla pursuant to Florida's long-arm statute which provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. §48.193(2).[5] It is well-settled in Florida that finding general jurisdiction over a defendant "requires far more wide-ranging contacts with the forum state than specific jurisdiction, and it is thus more difficult to establish." *Taylor v. Gutierrez*, 129 So.3d 415, 418 (Fla. 3d DCA 2013) (quoting *Biloki v. Majestic Greeting Card Co., Inc.*, 33 So.3d 815, 820 (Fla. 4th DCA 2010)). *See also Elmund v. Mottershead*, 750 So.2d 736, 737 (Fla. 3d DCA 2000) (general jurisdiction "requires a substantially heightened degree of Florida activity). Under Florida law, "substantial and not isolated activity" means "continuous and systematic general business contact" with the state of Florida. *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1318 (11th Cir. 2006). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). As a result, the Court must only determine whether exercising jurisdiction over Dr. Bonilla "would exceed constitutional bounds." *Id. See also United Techs*, 556 F.3d at 1275 n. 16 ("if the defendant's activities meet the requirements of section 48.193(2), [the due process requirement of] minimum contacts is also satisfied.") (internal citation omitted).

---

5   Plaintiffs do not argue that the Court has specific personal jurisdiction over Dr. Bonilla under §48.193(1). This is likely because Mrs. Ure's medicial treatment did not occur in Florida or Florida's territorial waters and specific jurisdiction requires connexity between a defendant's contact with the state and a plaintiff's cause of action. *See Wolf v. Celebrity Cruises,* No. 15-12341, 2017 WL 1149092 at * 4 (11th Cir. Mar. 28, 2017); *Laux v. Carnival Corporation,* 470 F. Supp. 2d 1379, 1383 (S.D. Fla. 2007) .

4

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.N. v. Brown*, 564 U.S. 915, 925 (2011). In *Daimler AG v. Bauman*, 134 S. Ct. 746, 761, 187 L. Ed. 2d 624 (2014), the Supreme Court discussed the requisite amount of in-forum contacts for a foreign corporation to be subject to general jurisdiction in a particular forum. To find "all-purpose" jurisdiction, a defendant's "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 761 (citing *Goodyear*, 564 U.S. at 919). The Court reasoned that "[i]t is one thing to hold a corporation answerable for operations in the forum State, [] quite another to expose it to suit on claims having no connection whatever to the forum State." *Id.* at 761. *Daimler's* holding is clear, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760.

The reasoning of *Daimler* and *Goodyear* applies with equal force to the exercise of jurisdiction over an individual defendant. Accordingly, the Court only has general jurisdiction over Dr. Bonilla if his contacts with Florida were so continuous and systematic that he was "at home" in the state.

**III. Dr. Bonilla was not "at home" in Florida**

Dr. Bonilla's contacts with Florida, as described above, are limited. He is employed by a Florida based cruise line and, in conjunction with his employment, has attended occasional training in the state and communicated with Florida medical professionals while at sea. Dr. Bonilla has a bank account with Wells Fargo, opened in Key West. In opening and maintaining his Wells Fargo account, Dr. Bonilla used his friends' Miami addresses as his mailing address. In addition, both his

employment agreement with Oceania and his banking agreement with Wells Fargo require that he resolve any disputes with those entities in Florida.

Florida state and federal courts have consistently held - in strikingly similar cases - that the nature of Dr. Bonilla's contacts in this forum, in isolation or combined, are insufficient to confer general jurisdiction. *See Taylor v. Gutierrez*, 129 So.3d 415, 422 (Fla. 3d DCA 2013) (physician defendant's contacts with Florida included employment agreements with Florida based cruise lines, attending medical conferences in Florida, vacationing in Florida, having bank accounts in Florida, and routinely embarking/disembarking at Florida ports); *Farrell v. Royal Caribbean Cruises, Ltd.*, No. 11-24399-CV, 2013 WL 178367, at *2 (S.D. Fla. Jan. 4, 2013) (contacts included obtaining medical degree in Miami, appointing cruise line as exclusive agent, routinely working in Florida ports, entering into business relationship with cruise line, and managing cruise lines' shoreside medical department); *Rinker v. Carnival Corp.,* No. 09-23154-CIV, 2011 WL 3163473, at *3-4 (S.D. Fla. Jul. 26, 2011) (similar contacts); *Hesterly v. Royal Caribbean Cruises*, No. 06-22862, 2008 WL 516495, at *10 (S.D. Fla. Feb. 25, 2008) (similar contacts); *Barnett v. Carnival Corp.*, No. 06-22521, 2007 WL 1526658, at *4 (S.D. Fla. May 23, 2007) (similar contacts); *Elmund v. Mottershead*, 750 So.2d 736, 737 (Fla. 3d DCA 2000) (ship physician's "incidental, almost entirely personal contacts with this state between voyages come nowhere close to the 'substantial and non-isolated activit[ies] within this state'").[6] Indeed, Dr. Bonilla's employment agreement with Oceania

---

6    A similar line of cases involving foreign cruise ship excursion companies supports a finding that Dr. Bonilla's limited contacts with Florida do not confer general jurisdiction. *See Chimene v. Royal Caribbean*, No. 16-23775, 2017 WL 1536055, at *3 (S.D. Fla. Apr. 5, 2017) (finding no general jurisdiction over tour company which had a Florida bank account and mailing address, procured insurance in Florida, attended business meetings in Florida, and consented to jurisdiction in the Southern District of Florida); *Wolf*, 2017 WL 1149092, at * 4 (zip-line excursion company with no place of business in Florida, but with Florida business addresses and which filed statements with the Florida Department of State, was not subject to general jurisdiction); *Carmouche v. Tamborlee Management, Inc.,* 789 F.3d 1201 (11th Cir. 2015) (shore excursion company's contacts, including having a Florida bank account and two Florida addresses, purchasing insurance from Florida companies, filing a financing statement with the Florida Secretary of State, joining a non-profit trade organization based in Florida, and consenting to jurisdiction in Florida for all disputes arising out of its agreement with the cruise ship company were not sufficient to confer general jurisdiction.)

6

and his account agreement with Wells Fargo, mandating that he litigate any disputes with those entities in Florida, are not sufficient contacts to confer general jurisdiction. *See Taylor*, 129 So.3d at 419 (employment agreement that specifies Florida as forum for disputes did not confer general jurisdiction); *Barnett*, 2007 WL 1526658, at *4 (forum selection clause in employment agreement did not confer general jurisdiction because plaintiff was not a signatory to agreement). In addition, attending training or conferences in Florida is not enough to confer jurisdiction. *See Taylor*, 129 So.3d at 419 (citing cases). Working aboard a ship that takes off from a port in Miami is not enough. *See Hesterly,* 2008 WL 516495, at *10. Even Dr. Bonilla's bank account is insufficient to confer general jurisdiction, particularly since Dr. Bonilla has established that he merely used friends' addresses to open the account. *See Taylor*, 129 So.3d at 420 (defendant's bank account, opened with friend's Miami address, did not constitute sufficient contact to confer general jurisdiction). Dr. Bonilla simply does not have systemic and continuous contact with Florida such that he is "at home" here. Accordingly, the Court has no personal jurisdiction over Dr. Bonilla.[7]

---

7    The Court is cognizant that its ruling essentially forces Mr. Ure to litigate in two separate forums if he wishes to pursue his claims against Dr. Bonilla, since the ticket contract requires all disputes with Oceania to be resolved in Florida. The result, likely in most cases involving a foreign ship physician, poses a hardship on passengers who were not contemplating the jurisdictional ramifications of their cruise ticket when planning a

## **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant, Fabian Bonilla, M.D.'s, Limited Appearance for the Purpose of Moving to Dismiss Plaintiffs' Second Amended Complaint for Lack of Personal Jurisdiction [ECF No. 133] is GRANTED.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of June, 2017.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record

---

vacation. However inequitable the result, the Court, bound by Florida statute and Due Process constraints, may not exercise personal jurisdiction over a defendant where there is none.